Ox’inxon of Daniel Dulany, relating to the above CHS6»
The question put, whether the present plaintiff could or not have brought replevin on the possession of the defendant under the first replevin, was, I suppose, with a view to the act of limitations. I apprehend the question stated with this view is against the defendant, because the return on the nonsuit prevented any effect from the possession of the defendant under the first replevin. On the point whether this present plaintiff might not have brought Replevin against the present defendant when in possession *396 under the replevin against J. Coursey, I have little doubt but he might. If not, there would be much inconvenience and great latitude given for the practice of fraud and colhision. If a lord should distrain hors de son fee the cattle of a stranger, the tenant might replevy, and surely the stranger might against the tenant, for the case supposed would exemplify the very definition of replevin, “ a re- “ medy provided by the law for the specific recovery of “ personal property unjustly taken and detained,” (though Blackstone says, very erroneously, that replevin is only in one instance of unlawful taking, that of a wrongful distress.,) and the transaction being inter alios, as it cannot affect the right, so neither can it affect thé remedy which is inseparable from the right.
The cases in 8 Mod. Gilbert and Strange, proceed on a peculiar principle. When goods belonging to a defendant are taken in execution on fieri facias, or by distress on conviction, they being in the custody of an officer acting-under the mandate of authority, are in the custody of the law, for the very purpose that justice may be done; but if the replevin by defendant were allowable, the views of justice might be disappointed, and the very object of the judgment destroyed; but if the property of a stranger should be taken, it would be a wrong, and consequently the thing taken would not be in custody of the law. In the first instance it would be incongruous for the law to allow a process to defeat its ends; but in the second, very agreeable to its principles, that a man should not suffer an injury from the act of a stranger. Execution authorises the officer only to make or levy the debt, or penalty out of the chattels of the defendant; but in taking, for the purpose, the chattels of another person, he acts without authority. If the sheriff, on a fieri facias against the effects of A. takes and sells the goods of B. the owner may sue him. 1 Burr. 31. 638. In replevin the plaintiff shews the cattle of a stranger for the cattle of J. _D. and the officer takes them, he is a trespasser. 2 Roll, Abr. tit. Replevin}. .
*397 In the case of distress for rent arrear, the goods from the first taking are in the custody of the law, and not merely in the distrainer. 3 BL 146. But their being in this custody does not prevent the suit by replevin ; on the contrary, the suit is most proper in the very instance. When replevin is brought, the defendant may defend his possession, if he has property, by the writ de proprietaik probandoi, as he has means to secure his possession, and as, if the plaintiff in replevin should fail, the defendant may be entitled to retorno habendo. It might be reasonable (as full justice might be obtained without it) to say that the defendant in replevin should not, during the pendency of the suit, bring replevin on his part, as it would tend to iriliniteness. But the case of a stranger is very different. He cannot make himself a party to the suit, entitle himself to the writ de proprietate probanda, 2 Roll. Abr. 431. or to a return on any event of the suit, not being provided for, or having the means of security afforded him on the suit, he consequently has a remedy by action against the possessor ; for there cannot be an irremediable right, and it would shock the first principles of justice to allow, that what A. and B. may do shall deprive C. of his right. The true legal ground of replevin is the unjust taking and detaining personal property, and of the remedy, that the owner may be specifically restored to it, and compensated for the injury from the unjust detention. A denial of justice is injustice, suspension is deprivation for the time. Injury is not denominated from its degree ; but suppose, the replevin, on the mere allegation of taking and detaining, should deprive the owner of his right, or suspend it against the maxim, that res inter alios actce alteri nocere non debent, and against the maxim, that right and remedy are terms convertible. What would be the consequence l The effect of judgment is permanent and conclusive.. If the plaintiff is not to be interrupted by replevin in his pursuit of a judgment, surely when he obtains it he ought to be at rest. The precaution that he should not be interrupted in the pursuit would be a strange regulation, if the *398 judgment should not have this effect; between the parties would, and therefore reasonable that cross replevins should not be brought. So far respecting the question whether Thomas Coursey might not have brought replevin during the contest between the present defendant and J. Coursey.
It is not stated when the present plaintiff left the Province. The second replevin, I suppose, was brought when he was in the Province, because it appears he was bound in the bond for return, in April, 1758, and I suppose, though it does not appear from the papers, that the negroes were redelivered to J. Coursey in consequence of this bond. Inferring from these circumstances, that the negroes were redelivered to John Coursey in consequence of this bond, and moreover, that the present plaintiff left the Province before the judgment and return to the present defendant; there has been no time for the act of limitation to operate on the possession of the present defendant.. There is, however, another fact material in the defence. There had been an actual possession in John Coursey and the present defendant for eighteen or twenty years. The possession of the defendant has been under a claim of absolute property in disaffirmance of the title of all others. How the possession of J. Coursey has been, is then the point to be considered, and what will be the legal consequence from the fact as it may turn out? If the property of J. Coursey was general, id est, if not special, affirm atory of the general property in the plaintiff, the action accrued very long ago. On this part of the case it is to be observed, that possession of a chattel is prima facie an indication of a general property; and therefore, if a derivative or special property is alleged, it must be proved, the presumption being against it. This may be variously illustrated. A man in possession sells a chattel; another., being the true owner, recovers against the vendee, action will lie for money had and received by the vendor for the use of the vendee, on this very principle, that when he sold a chattel in his possession, which is a badge of owner *399 ship, it is a deceit to sell as his own what belonged to another ; the consideration on which the money was paid failing, it ought therefore to be returned. This may be inferred from the general reasoning in 2 Burr. 1008. and I remember a case wherein the point was determined as above, though at present I cannot refer to it. If a man has my chattel with my consent for a limited time, as on condition, or holds it at my will, when the time expires, or my will is declared that I will have it returned, if he holds over, I certainly may recover it on proof of the nature of the possession; but if he has possessed my chattel for above three years, and I have no proof that it was with my consent, as above, the presumption on the possession will prevail. It must be so ; for a negative cannot be proved, and the affirmative is on his part who alleges the special property, because it must flow from a positive act.
On this head, as it seems to me, the plaintiff should be driven to prove the special property in j. Coursey. If he should fail in this, the act of limitations seems to apply. If he should prove it, he may be under the necessity of contending for the propriety of hearsay evidence, and shew such a privity and connection in the whole business, as may give the defendant the greater advantage on the point of the evidence at the former trial, and of the verdict.
Considering the relation between j. and Thomas Coursey, his presence at the first trial, his payment of the fees, and more particularly his giving bond for the return to y. Coursey, and the plea of property in him, the connection is pretty evident; and here are the strongest circumstances to prove him essentially a party, though not nominally, to the suit.
Whether the former verdict shall be offered in evidence. If y. Coursey had the general property, the length of time has been very great.
If he had a special property only, it must be proved. If this be proved, it will at die same time be proved, that the interest of J. and T. Coursey was united, and the pos *400 session being at the time of the former replevin in J, Coursey, the suit could not be brought against another person. The general rule is, that a verdict is to be given in evidence only between the same parties, and on the same point. The reason assigned in Gilb. 30. is, in the former part of it, plain and agreeable to common sense; the rea - son from attaint is rather technical. The general rule holds now, though attaint has ceased; yet, however, there may be relief by new trial by the party, which one not a party cannot have; but there is an exception to the rule in some instances, as to a person united in interest, and especially when he could not be the party, though concerned in interest,