CENTRAL TRUST CO. et al. v. WABASH, ST. L. & P. RY. CO. et al.

(Circuit Court, E. D. Missouri. April 2, 1906.)

1. COURTS—RULES OF DECISION—LAW OF THE CASE.

Where, in proceedings to determine the rights of certain railroad companies in a railroad right of way, the trial judge *held* that one of the companies derived its title to the right of way solely under a certain tripartite agreement, which statement of the trial judge was quoted with approval by the Supreme Court in determining the case on appeal, such decision constituted the law of the case in a subsequent proceeding to construe the decree then rendered.

2. RAILROADS—RIGHT OF WAY—USE BY OTHER COMPANIES—EXTENT—DECREES —CONSTRUCTION.

A tripartite agreement under which a railroad acquired a right of way provided that it should permit other railroads to use such right of way under reasonable regulations and times to be agreed on. At the time the agreement was executed the right of way consisted of a strip of land 42 feet wide through a park and 28 to 30 feet wide from the park to a depot, and in a proceeding to determine the rights of other companies to use such right of way the court decreed that the C. Company should enjoy the equal use and benefit of the right of way, tracks, switches, side tracks, turnouts, turntables, and other terminal facilities with the original company, and for the use of such right of way, tracks, side tracks, switches, turnouts, and other terminal facilities between the north line of the park and terminus of the road, it should pay a certain designated compensation, and also contribute to the maintenance of the road. *Held*, that the rights so conferred on the C. Company were limited to the use of railroad appliances on the strip of land called the "right of way," and embraced the properties on which the valuation was fixed, including such appliances as were subsequently erected on such strip, but did not include the right to use industrial tracks and terminal facilities off such right of way.

In the matter of the intervening petition of the city of St. Louis, and the St. Louis, Kansas City & Colorado Railroad Company, filed herein July 12, 1886. Application and motion of the St. Louis, Kansas City & Colorado Railroad Company to construe decree herein.

M. A. Low, Frank Hagerman, and W. H. Evans, for St. Louis, Kansas City & Colorado R. Co.

Wells H. Blodgett (Charles N. Travous, James L. Minnis, and H. S. Priest, of counsel), for Wabash, St. Louis & Pacific Railroad Co.

ROGERS, District Judge. This is a proceeding in the nature of a motion by the St. Louis, Kansas City & Colorado Railroad Com-

pany (for convenience hereafter called the "Colorado Company") against the Wabash, St. Louis & Pacific Railway Company (for convenience hereafter called the "Wabash Company") asking the court to interpret and enforce a decree rendered in this court on the 31st of December, 1886. The history of the original litigation, culminating in the final decree now sought to be enforced, will be found in the opinion of Mr. Justice Brewer, reported in 29 Fed. 546, and in the opinion affirming the case in Joy v. City of St. Louis, 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843. The present litigation grows out of the ambiguity or uncertainty of the exact meaning of the language used in that decree. The decree is as follows:

"This day came the city of St. Louis, Missouri, and the St. Louis, Kansas City & Colorado Railroad Company, interveners herein, by their solicitors John W. Noble and John C. Orrick, Leverett Bell and John P. Ellis, and the defendants against said intervention, the Central Trust Company of New York, and James Cheney (complainants in said consolidated cause), the Wabash, St. Louis & Pacific Railway Company, defendants in said cause, Solon Humphreys and Thomas E. Tutt, receivers of said latter company, by their solicitors. Wager Swayne, Wells H. Blodgett, H. S. Priest and War-wich Hough, and thereupon the cause on said intervention came on to be heard upon the reports (both that on preliminary and that on final hearing), George H. Shields, Esq., Special Master, pro hac vice, herein only appointed by this court, and to whom this cause, under previous orders herein, was referred to ascertain and report the facts as well as his conclusions of the law; and also on the amended bill, answer and replication, exhibits documents and evidence adduced; said reports bearing date July 24 and October 4, 1886, respectively, and also upon exceptions taken to said reports on the part of the said defendants, the Wabash, St. Louis & Pacific Railway Company, Solon Humphreys and Thomas E. Tutt, receivers thereof, and the Central Trust Company of New York and James Cheney as trustees, and it appearing that the said exceptions by consent of parties, are taken as duly filed in this court, as well as before the said master, and the said exceptions and said cause having been argued by counsel and due deliberation had thereon, the court now orders, adjudges and decrees, that each of said exceptions of said defendants be disallowed and overruled, save and except that part of the eleventh exception which relates to the basis of compensation for use of right of way, and that part of said eleventh exception be and is hereby sustained; and the said reports, save and except as aforesaid, are in all things hereby confirmed; and the court will determine the compensation and the basis therefor, without further reference to the master.

"And the court doth further find, order, adjudge and decree that the equities are with said interveners and said interveners are entitled to the relief as prayed for in their amended bill of complaint herein. And the court finds, adjudges and decrees that the basis of compensation to be paid by the intervener, the St. Louis, Kansas City & Colorado Railroad Company *for the use of the right of way and the tracks, side tracks, switches, turnouts, turntables, and other terminal facilities of said Wabash, St. Louis & Pacific Railway Company at and between the north line of Forest Park and Eighteenth street in the city of St. Louis, shall be the value of said right of way, tracks and other property last described as determined by the master in his said reports;* and the compensation to be paid shall be, per annum, 6 per cent. on one-half of the value of said *right of way, tracks, side tracks, switches, turnouts, turntables, and other terminal facilities of said Wabash, St. Louis & Pacific Railway Company at and between the north line of Forest Park and Eighteenth street in the city of St. Louis shall be the value of said right of way, tracks and other property last described, as determined* by the master in his said reports; and the compensation to be paid shall be, per annum, 6 per cent. on one-half of the value of said *right of way, tracks, side tracks, switches, turnouts, turntables and other terminal facilities, and the* said one-

half value is and shall be taken to be $500,000.00; and that the intervener, the St. Louis, Kansas City & Colorado Railroad Company, its successors or assigns, pay to said receivers, Solon Humphreys and Thomas E. Tutt, or to their successors in interest, the sum of thirty thousand dollars per annum, in monthly installments of twenty-five hundred dollars each, on the 15th day of each month, so long as this decree remains in force, the first monthly installment to become due and payable thirty days after said railroad company, intervener, shall have connected its tracks with that of the Wabash, St. Louis & Pacific Railway Company at the north line of said Forest Park. All subsequent payments to be made from month to month during the lifetime of this decree.

"And the court doth further find, adjudge and decree that the expense per annum of maintaining the said right of way and other property pending such joint use thereof, including therein all taxes upon said property, shall be borne by said Wabash, St. Louis & Pacific Railway Company and the said intervenor, the St. Louis, Kansas City & Colorado Railroad Company, in proportion to the number of wheels each of said companies shall cause to be passed over the main track or parts thereof on said right of way per annum bears to the total number of wheels that both of said companies shall cause to be passed over the same during each year pending the said period of such joint use, and that this expense shall be paid at the expiration of each year. The said right of way and tracks thereon and other terminal facilities shall be maintained and kept in good repair by the Wabash, St. Louis & Pacific Railway Company. And the court doth further order, adjudge and decree that the running of all trains, engines or cars of said intervener, the said St. Louis, Kansas City & Colorado Railroad Company, over *said right of way and tracks, and the use of said right of way, road terminal facilities and other property specified as aforesaid, shall conform to the rules and regulations now in force,* and such other reasonable rules and regulations as may hereafter be adopted by the said Wabash, St. Louis & Pacific Railway Company, or its said receivers, to enable said intervener to fully enjoy the benefits of this decree, and that the trains of said railroad company, intervener, shall be so regulated as that at least eight minutes shall, if deemed necessary, intervene between its trains and the trains of said Wabash, St. Louis & Pacific Railway Company at any point between said north line of Forest Park and Eighteenth street, and that the sole control and regulation of the running of the trains of the said companies shall be under this decree in the Wabash, St. Louis & Pacific Railway Company and its receivers, and subject to the further order of this court.

"And the court doth further order, adjudge and decree that in all respects, subject to the terms of this decree, the said railroad company, intervener, shall *enjoy the equal use* and benefit of *said right of way, tracks, switches, side tracks, turnouts, turntables and other terminal facilities with said Wabash, St. Louis & Pacific Railway Company,* or its said receivers, and the said Wabash, St. Louis & Pacific Railway Company, and Solon Humphreys and Thomas E. Tutt, as such receivers, and the said Central Trust Company of New York, and James Cheney, and all persons claiming by, through or under them, and each of them respectively, and their agents, servants, counselors and employés, be, and the same are hereby perpetually enjoined and restrained from in any manner refusing to permit the said intervener, the said St. Louis, Kansas City & Colorado Railroad Company, its successors or assigns, and its or their officers, agents, employés, *from using with it or their engines and cars (loaded or empty) the said right of way, tracks, switches, side tracks, turnouts, turntables and other terminal facilities of said Wabash, St. Louis & Pacific Railway Company between the north line of said Forest Park and said Eighteenth street on the terms hereinabove set forth in this decree in and for the transacting of its or their business and in the operation of its or their road.*

"And the said intervener, the St. Louis, Kansas City & Colorado Railroad Company, by its officers, agents and employés and each of them is hereby authorized and permitted with its *right of way, road, tracks and property, engines and cars, loaded or empty,* to make connection with said Wabash, St. Louis & Pacific Railway Company at the north line of said Forest Park,

and to use the *said right of way, tracks, switches, side tracks, turnouts, turntables and other terminal facilities of said Wabash, St. Louis & Pacific Railway Company*, or any one claiming by, through or under it as to the same, between the north line of said Park and Eighteenth street on the terms, in the manner and subject to the regulations in this decree set forth, in and for the transaction of the business and in operation of the road of said St. Louis, Kansas City and Colorado Railroad Company, its successors or assigns, and said Solon Humphreys and Thomas E. Tutt, receivers, and all agents, servants or persons by them engaged or acting with or for them: said Central Trust Company and James Cheney; said Wabash, St. Louis & Pacific Railway Company; and all persons claiming by, through or under said last-named company, are hereby restrained and enjoined from in any wise obstructing, preventing, interfering with or refusing to comply with the permit and privilege hereby ordered, adjudged and decreed. And said receivers shall by all means in their power aid to fully carry this decree and every part thereof into effect.

"And it is further ordered, adjudged and decreed that the interveners have and recover of the respondents answering herein, their costs and expenses in this proceeding, including the master's compensation, to be herein taxed, and that the receivers, Solon Humphreys and Thomas E. Tutt, are authorized and directed to pay the same out of any funds now in their hands."

The contentions of the parties grow out of the use of the words "right of way, tracks, switches, side tracks, turnouts, turntables and other terminal facilities of said Wabash, St. Louis & Pacific Railway Company between the north line of said Forest Park and said Eighteenth street," which language is repeatedly used in the decree in different connections, and in this opinion has been italicized by me. At the time the original decree was rendered the Wabash, St. Louis & Pacific Railway Company owned a right of way through Forest Park 42 feet wide, and a right of way 28 or 30 feet wide from Forest Park to the Union Depot at Eighteenth street, in St. Louis, Mo. It derived all this right of way through an instrument of writing spoken of in all this litigation as the "tripartite agreement." That this last statement is true is distinctly shown by the language of the Supreme Court of the United States in 138 U. S., at page 43, 11 Sup. Ct. at page 255, 34 L. Ed. 843, in these words: "The tripartite agreement is the only muniment of title under which the appellants now enjoy the right of way." The Wabash Company derived its title solely through the appellants in that case, and therefore held under the same muniment the tripartite agreement. That the right of way was 42 feet wide through the park, and 28 or 30 feet wide from the park to the Union Depot at Eighteenth street, is distinctly held both by Judge Brewer in the original opinion, and quoted with approval by Mr. Justice Blatchford at page 44 of 138 U. S., page 243 of 11 Sup. Ct., 34 L. Ed. 843, in the opinion of the Supreme Court of the United States, and for the purposes of this motion must be taken as settled. In stating the width of the right of way it was not done carelessly or loosely, for the very question then under consideration was the meaning of the words "right of way" as used in the ninth paragraph of the tripartite agreement. That article is as follows:

"Ninth. Said party of the second part shall permit, under such reasonable regulations and terms as may be agreed upon, other railroads to use its right of way through the park and up to the terminus of its road in the city of St. Louis, upon such terms and for such fair and equitable compensation, to be paid to it therefor, as may be agreed upon by such companies."

It follows that the language used in the decree, and which I have quoted above, "right of way, tracks, side tracks, switches," etc., and out of which the present contentions grow, was predicated upon the words "right of way" found in the tripartite agreement, and that the words "right of way," as used in the tripartite agreement, alluded to the strip of land 42 feet wide through the park, and 28 or 30 feet wide from the park to the Union Depot. On its face the language used in the decree was broad enough to embrace, not only all the facilities owned by the Wabash Company situate on the above-designated strip known as the right of way, but all the facilities of the Wabash Company off said strip known as the right of way, including industrial tracks and terminal yards and facilities along its line and at the Union Depot, without regard to whether the Wabash Company then owned, or subsequently acquired the land and constructed said properties, and substantially that is the contention of the Colorado Company at this time. On the other hand, the Wabash Company contends that the language of the decree was never intended to embrace anything more than to secure to the Colorado Company the right to the use of such tracks and terminal facilities as are on the right of way described in the record, to wit, on the strip 42 feet wide through the park and 28 or 30 feet wide from the park to the Union Depot at Eighteenth street. Moreover, that such use so secured to the Colorado Company is limited to the running and passing of trains on and over the Wabash tracks on said strip.

The counsel have presented their respective contentions with marked ability, great research, and an exhaustive and critical examination of a very voluminous record. Without the aid thus rendered, the task of mastering the record in the way it is made up would have been a very laborious, tedious, and difficult duty, and, notwithstanding their very valuable aid, I do not conceal the fact that the questions presented have been very perplexing and troublesome. Because of the magnitude of the interests involved to both roads and to the public, coupled with the very earnest and able insistence of the counsel of both parties that their positions were correct, I have given the case the best consideration of which I am capable, and have been unable to fully assent to the conclusions reached by counsel on either side. This record is very voluminous, so much so that a full discussion of the points so ably argued and briefed, in the light of the evidence and the three opinions already delivered in the case, not to mention the well-considered reports of the master, would protract this opinion beyond all reasonable limits. Nor do I think it is either necessary or important to do so. It is, as I conceive, no part of the duty of the court to do more, on this motion, than to interpret and enforce the decree of December 31, 1886, and only so much of the record will be called into service as is found necessary to that end. What did Judge Brewer mean by the following language used in the decree:

"And the court doth further find, order, adjudge and decree, that the equities are with said interveners and said interveners are entitled to the relief as prayed for in their amended bill of complaint herein."

It will be noted that the court says the interveners are "entitled to the relief prayed for in their amended bill of complaint." What was the relief prayed for? It was an injunction "restraining the said Wabash, St. Louis & Pacific Railway Company, and the said Solon Humphreys and Thomas E. Tutt, as such receivers, and each of them, and of their agents, servants, counselors and employés, from in any manner refusing to permit your orator, the St. Louis, Kansas City & Colorado Railroad Company, under such reasonable regulations and terms as to this court may seem proper, from using the said right of way of said Wabash, St. Louis & Pacific Railway Company, commencing at the north line of said park, where the railway of said Wabash, St. Louis & Pacific Railway Company enters said park, thence over said right of way to said Eighteenth street in said city of St. Louis, by running its engines and cars over and upon said right of way, including the tracks of said Wabash, St. Louis & Pacific Railway Company between the points at said Union avenue and said Eighteenth street, that a temporary injunction, pending the said hearing thereof, against the said defendants, as herein prayed, be granted; that the said receivers, Solon Humphreys and Thomas E. Tutt, be ordered to permit said St. Louis, Kansas City & Colorado Railroad Company to use said right of way and tracks between said points last above named, and on the terms aforesaid; and that your orators may have such further relief in the premises as is consistent with equity and good conscience, and as to this honorable court may seem meet."

It will be borne in mind that the rights asserted by the Colorado Company in its amended intervention, which culminated in the decree, were predicated on the ninth paragraph of the tripartite agreement, and on nothing else, and, as stated, the Supreme Court held, in effect, that the tripartite agreement was its sole muniment of title. That decree gave to the Colorado Company the exact specific relief prayed for in the amended bill of intervention, and it will be noted that Judge Brewer, in the passage quoted, did not give it any relief under the general prayer for relief. He granted the specific relief prayed for, and nothing else. Judge Brewer then proceeds to fix the basis of compensation to be paid by the Colorado Company for the enjoyment of the use decreed to it. It is here that, for the first time, in the decree or in the record, appears the language out of which this litigation grows. It is as follows:

"And the court finds, adjudges and decrees that the basis of compensation to be paid by the intervener, the St. Louis, Kansas City & Colorado Railroad Company, for the use of the right of way and the tracks, side tracks, switches, turnouts, turntables, and other terminal facilities of said Wabash, St. Louis & Pacific Railway Company at and between the north line of Forest Park and Eighteenth street in the city of St. Louis, shall be the value of said right of way, tracks and other property last described, as determined by the master in his said reports; and the compensation to be paid shall be, per annum, 6 per cent. on one-half of the value of said right of way, tracks, side tracks, switches, turnouts, turntables, and other terminal facilities of said Wabash, St. Louis & Pacific Railway Company at and between the north line of Forest Park and Eighteenth street in the city of St. Louis, shall be the value of said right of way, tracks, and other property last described, as determined

144 F.—31

by the master in his said reports; and the compensation to be paid shall be, per annum, 6 per cent. on one-half of the value of said right of way, tracks, side tracks, switches, turnouts, turntables and other terminal facilities, and the said one-half value is and shall be taken to be $500,000.00."

It will be noted that the compensation to be paid for the use of the facilities specified in the decree shall be the value of said right of way, tracks, and other property last described, as determined by the master's reports. What facilities were specified in the master's reports? What did the master determine as to the value of such facilities? In his first reports he quotes and reviews the testimony of the witnesses as to the value of the right of way, sidings, switches, etc., and the necessity for using them for storing, loading, and unloading cars, but when he comes to fix a valuation, extracting from the conflicting evidence a safe basis therefor, he says: "I think it would be proper to adopt as a basis the present value [not the original cost] of the property sought to be used, to allow interest," etc The words in brackets are mine. When he comes to fix the interest the Colorado Company was to pay, he says: "I think, from all the testimony, that a fair valuation of the right of way and tracks sought to be used, necessary to be used, should be fixed at $1,000,000." His first report throws no other or different light on what facilities were to be used than is found in these extracts. I cannot see that the uncertainty of the language of the decree is made any more certain by this report of the master. The words "turnouts, turntables and other terminal facilities" are not even used by the master in the report, but he does use the words "right of way and tracks sought to be used," and the words "property sought to be used"; thus confining himself to the subject-matter in litigation, as shown by the amended bill of intervention. In his second report the master reviews the different transactions out of which the tripartite agreement grew, and gives the court his deductions, which are fully confirmed by the Circuit and Supreme Courts, as to the effect of the ninth clause of the tripartite agreement, but nowhere does he use any language of similar import to that used in the decree, but adheres to his conclusion stated in his first report. In his last report he does say:

"On the final hearing additional evidence was offered as to the proper measure of compensation, and also as to the value of the real estate occupied by the railroad from the north line of Forest Park, to Eighteenth street. The testimony as to the value of the real estate does not include the superstructure or terminal facilities occupied by the Wabash, which the testimony of Mr. Talmage shows would be necessarily used if the intervener had the right to use the Wabash tracks."

And again the master says:

"His honor, Judge Brewer, in his order recommitting the case, calls attention to a question that is very difficult to determine; that is, whether the right of user by the interveners extends simply to the right of way not conveyed by the St. Louis County Railroad, or to the whole of the right of way, or whether the right goes to the use of the right of way and not to the tracks of the Wabash. The evidence of Col. Emerson and Mr. Lincoln shows that owing to the present construction of the Wabash Road, and its side tracks and switches, another track on the right of way could not be built throughout the whole distance, although it might be in some parts thereof. The contracts of August 11, 1875, provide for the joint use of portions of the right of way

through the tunnel and cut, and also for laying a third rail at designated points, and provide for regulations for such joint use. In view of these facts, and in view of the fact that the pleadings show that the whole of this right of way is merged in the Wabash by forfeiture and by subsequent conveyances, and in view of the fact that the Wabash is so constructed that another track could not be placed theron, it would seem that equity would require the intervener to be permitted to use the present tracks."

It is clear from these extracts that the master had in mind while discussing this proposition the strip of land hereinabove described as a right of way, and this, report, in the opinion of the court, contains nothing tending to show that facilities of any kind which were not situate on the strip of land called the right of way were embraced in the properties upon which the master fixed his valuation. Nor does it aid the court in determining what Judge Brewer meant by the language used in the decree. We are left, therefore, to interpret the meaning of the decree by its language, in the light of the pleadings and the evidence. I cannot persuade myself, after a careful weighing of this whole record, that Judge Brewer intended, or that the decree means, in the light of the record, that the interveners should have the use, by virtue of this decree, of any properties belonging to the Wabash Company not situate on the strip of land known as the right of way, 42 feet wide, through Forest Park and 28 or 30 feet wide between Forest Park and Eighteenth street, and the superstructures and tracks of all kinds, whether called tracks, side tracks, switches, turnouts, turntables, or other terminal facilities, situate thereon. I am of opinion, however, that the fact that any parts of the above-specified facilities were put on the said strip called the right of way since the decree was rendered does not deprive the intervener of the same use thereof as if they had been placed there at the time the decree was rendered, for the reason that, to exclude the use of such facilities, is to deny the use of the right of way secured to interveners by the ninth paragraph of the tripartite agreement. In his opinion Judge Brewer said:

"Now the term 'right of way' has a twofold signification. It sometimes is used to describe a right belonging to a party, a right of passage over any track, and it is also used to describe that strip of land which railroad companies take upon which to construct their roadbed. Obviously in this paragraph [alluding to the ninth paragraph of the tripartite agreement] it is used in the latter sense."

He also said, in reference to the construction of the term "right of way," as used in the ninth paragraph of the tripartite agreement:

"I think, however, the true construction is this: that the Kansas Company was to have the first right, a right not limited to its necessities, but as broad as its convenience. Subject, and only subject, to such prior right, other companies were to have the use of the right of way, and if the respondent's business compelled the occupation by its tracks or sidings of the entire right of way, but the convenience of its business would permit the use of those tracks and sidings by another road, then such other road would be entitled to the use of both the right of way and the tracks and sidings. This construction is, I think, in accordance with the obvious intent of the parties, who were contracting for general rights, and not fixing the specific details."

: ·And in the decree itself is found this language:

"And the court doth further order, adjudge and decree that in all respects, subject to the terms of this decree, the said railroad company, intervener, shall enjoy the equal use and benefit of said right of way, tracks, switches, side tracks, turnouts, turntables and other terminal facilities with said Wabash, St. Louis & Pacific Railway Company, or its said receivers," etc.

And then proceeds to enjoin the Wabash Company and its receivers from preventing the Colorado Company from using their engines, cars, loaded or empty, upon said right of way, tracks, switches, etc., on the terms set forth in the decree, "In and for the transaction of its or their business in the operation of its or their road." I think therefore, that it is quite clear that the Colorado Company is entitled, under the decree, to enjoy equal use and benefit of said strip of land known as the "right of way" and of all tracks and facilities thereon for all the purposes it is used by the Wabash Company. This view conforms to the rights secured to other companies by the ninth paragraph of the tripartite agreement, which imposes no limitations upon the use of the right of way, except that it must be under such reasonable regulations and terms as may be agreed upon. In his opinion Judge Brewer uses this language:

"It is a familiar fact that in a large city like St. Louis along the track of an important railroad, within the city limits, are built large manufacturing establishments, warehouses, and other buildings for the convenient transaction of business between the carrier on one hand, the manufacturer and the merchant on the other. Another road coming over the same track, not only uses the property of great value, which the company owner has in the first instance paid for, but also shares in the benefit of access to all these manufacturies, warehouses, etc. It thus places itself in competition with the original company for this valuable business. Such competition may operate to diminish the business of the original company, or compel it to lower its rates to preserve the business. In either way it operates to the serious detriment of the original company. The new company comes in as an equal competitor. It shares in all the benefits of its business, and it may share equally. Under those circumstances it seems to me no more than fair that a new company, which crowds itself into an equal access to such benefits and privileges, should pay an equal share of the interest on the value of the property. Hence I shall sustain the objections of the respondent to the report of the master, so far as concerns the amount of compensation, and I think that the intervener company must pay one-half the interest on the value and its share of the cost of keeping up the track, determined upon a wheelage basis. In other respects the report of the master will be confirmed."

But this language must be weighed with reference to the precise question Judge Brewer was considering. He was then discussing the question of compensation which the Colorado Company should pay for the use of the right of way of the Wabash Company, and he gave as a reason why the allowance of the master was incorrect that the Colorado Company gained access, by virtue of the proprietary companys' industrial tracks, to the manufacturing establishments, warehouses, and like enterprises, and all property along and adjacent to its line of road, thereby coming in competition with the proprietary company in the business of such establishments, in all probability sharing equally in such business, and therefore "should pay an equal share on the value of the property so occupied." What property? The industrial tracks and terminal facilities off the right of way?

Not at all (and Judge Brewer does not say so), but rather all the properties on the right of way, and the right of way itself. To construe this language of Judge Brewer as giving the Colorado Company equal use of the industrial tracks, yards, and terminal facilities off the strip of land known as the "right of way," is to say that the Colorado Company is entitled to equal rights in property which the Wabash Company did not acquire by virtue of the tripartite agreement, and upon which agreement all the Colorado Company's rights are made to depend. Eliminate that agreement from this litigation, and the Colorado Company would have no standing in court whatever.

No such construction should be placed on the language of the court if there is another construction consistent with the court's language, and consistent with the rights of the Colorado Company, which does not require the taking of private property without due process of law; for I do not think it can be fairly said that the Wabash Company has ever had a day in court as to any other properties which it may own which are not embraced in the strip of land known as the right of way, and the properties and superstructures situate thereon. There is such a construction as that now suggested; for in a certain sense the Colorado Company may gain access and may share in the benefits of the industrial tracks along the lines of the Wabash Company, and bring about competition with the Wabash Company in the business such tracks were built to promote. But it contemplates proper business arrangements to that end, and not that it shall enjoy such benefits free and without proper arrangements with the Wabash Company, and I do not think that Judge Brewer meant anything more than that, or that the language used by him fairly justifies any other construction, due regard being had to the subject-matter of the litigation, as shown by the pleadings and facts in the record, and the construction placed upon the tripartite agreement by both the Circuit and Supreme Courts.

There is evidence in the case tending to show that the Colorado Company has contributed to the maintenance of certain industrial tracks along the line of the right of way in controversy, and also perhaps to certain tracks in and about the yards of the Wabash Company. Whether the sums paid by the Colorado Company, whatever they were, were paid under the decree or paid under some outside arrangement, is not made clear, nor do I think it matters whether they were paid under the one or the other. The decree is not a contract, except in the most technical sense. It is a decree of the court, presumably adjusting the differences between the Colorado Company and the Wabash Company, not upon the basis agreed upon by the parties, but upon the basis of what the court found to be correct, and the acts of the parties under the decree are not to be considered in determining what the court means. If it were a contract, the rule would be different. If it is a fact that the Colorado Company has paid under the interpretation of the decree placed upon it by both parties sums of money for industrial tracks and other tracks in the yards of the Wabash Company, or if it is a fact that the Wabash

Company has not rendered an account for such sums of money which the Colorado Company should have been called upon to pay under an outside agreement, all such matters are mere matters of account between the companies which ought not to affect the proper interpretation of the decree at all. The decree must speak for itself, and the interpretation to be placed upon it must depend upon the language of the decree, the pleadings, and the evidence in the case, and not on the acts of the parties under it.

What I have now said, I think, sufficiently indicates the conclusions reached by the court, and a decree will be entered in conformity thereto.