# WASHINGTON POST COMPANY *v.* CHALONER.

---

LIBEL AND SLANDER; RES JUDICATA; JUSTIFICATION; EVIDENCE.

1. When this court, on an appeal from a judgment of dismissal following the sustaining of a demurrer to a declaration in an action of libel, reverses the judgment on the ground that the publication was libelous *per se*, its ruling is binding on the lower court on a trial of the action, and equally binding on this court on a subsequent appeal by the defendant, and cannot be reviewed on such appeal.

---

NOTE.—On truth as a defense in action for libel or slander, see notes in 21 L.R.A. 502; 31 L.R.A.(N.S.) 132; and 50 L.R.A.(N.S.) 1040.

2. Justification of a libel cannot be given in evidence on the general issue, but must be specially pleaded; and therefore, where a plea of justification accompanying a plea of the general issue, is withdrawn at the trial, evidence of the truth of the publication is inadmissible.

3. While in an action of libel the presumption is that the plaintiff's reputation is good, it is nevertheless competent for the plaintiff in his case in chief to show that at the time of the publication his reputation was excellent, and that his social standing was high, especially when the defendant, who has pleaded justification, does not abandon such plea until the trial has commenced. (Citing *Russell* v. *Washington Post*, 31 App. D. C. 277.)

4. Where the defendant pleads the truth of an alleged libel, the plaintiff, in order to show its untruth, may show the circumstances of the transaction charged which are relevant to the issue of his innocence.

5. While published retraction of a libelous newspaper publication may be given in evidence in an action against the owner of the newspaper, in mitigation of damages, in such an action news items published in the defendant's newspaper and in other newspapers sixteen days prior to the publication of the alleged libel are inadmissible for that purpose. (Citing *Washington Herald Co.* v. *Berry*, 41 App. D. C. 322.)

No. 3025.   Submitted October 8, 1918.   Decided November 12, 1917.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action of libel.                                                   *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action for libel. The article complained of was published by the defendant in the Washington Post of April 3, 1909, and is, as pleaded: "John Armstrong Chaloner (Chanler) (meaning the plaintiff) brother of Lewis Stuyvesant Chanler, of New York, and former husband of Amelie Rives, the authoress, now Princess Troubetskoy, is recuperating at Shadeland, the country home of Major Thomas L. Emry, near Weldon, North Carolina, where he had gone to recuperate following a nervous breakdown as a result of the tragedy at his home, Merry Mills, near Cobham,. on March 15, when he shot and killed John Gillard, while the latter was abusing his wife, who

had taken refuge at Merry Mills, Chaloner's home. Following the shooting, Chaloner suffered a nervous breakdown, and was ordered by his physician to take a long rest. He decided to visit his old friend, Major Emry, who, with Chaloner, was instrumental in founding Roanoke Rapids, a manufacturing town 5 miles from Weldon. Chaloner arrived at Weldon after traveling all night, and was immediately hurried to Shadeland, where he received medical attention and temporary relief."

Defendant demurred on the ground that the article did not charge a libel *per se.* The demurrer was sustained, and, plaintiff electing to stand on his declaration, judgment of dismissal was entered. An appeal was taken to this court, where the judgment of the lower court was reversed, this court holding that the article was libelous *per se,* and the case was remanded for a new trial. The defendant pleaded the general issue. Later it added the following plea: "And for a further plea in this behalf defendant says that the said plaintiff ought not to have or maintain his aforesaid action against it, the defendant, because the said defendant says that the article and words complained of by the plaintiff in the declaration are true in substance and in fact according to the natural and ordinary signification and without the meaning imputed to them in the several innuendoes contained in the said declaration. Wherefore the defendant, at the time mentioned in the said declaration, published of and concerning the plaintiff the said several words in the said declaration mentioned, as it was lawful for it to do, for the cause aforesaid, and this the defendant is ready to verify." There was a verdict for the plaintiff in the sum of $10,000, and the defendant brings the case here for review.

*Mr. Wilton J. Lambert, Mr. J. J. Darlington* and *Mr. R. H. Yeatman,* for the appellant, in their brief cited:

*Ayers* v. *Greder,* 15 Ill. 37; *Bahler* v. *Gockley,* 18 Ill. App.; *Baglin* v. *Southern Surety Co.* 41 App. D. C. 530; *Barnes* v. *Crawford,* 115 N. C. 76; *Berea College,* 77 S. W. 381; *Bettner* v. *Holt,* 70 Cal. 274; *Blakesless* v. *Hughes,* 50 Ohio St. 490; *Chubb* v. *Gsell,* 34 Pa. 114; *Cass* v. *New Orleans Times,* 27

La. Ann. 214; *Cooper* v. *Phipps,* 24 Or. 362; *Cornwall* v. *Richardson,* 21 E. C. L. 758; *Dame* v. *Kenney,* 25 N. H. 324; *Delaney* v. *Kaetel,* 81 Wis. 353; *Dixie F. Ins. Co.* v. *Betly,* — Miss. —, 56 So. 706; *Davis* v. *Coblenz,* 174 U. S. 719; *Dixon* v. *Stewart,* 33 Iowa, 129; *De Moss* v. *Haycock,* 15 Iowa, 149; *Downey* v. *Brown,* 3 Colo. 594; *Doan* v. *Kelly,* 121 Ind. 413; *Farmer* v. *Anderson,* 33 Ala. 84; *Fry* v. *Bennett,* 3 Bosw. 246, 28 N. Y. 324; *Gray* v. *Times Newspaper Co.* 74 Minn. 458; *Hays* v. *Hays,* 1 Humph. 402; *Hayes* v. *Ball,* 72 N. Y. 418; *Hitchcock* v. *Moore,* 70 Mich. 112; *Jackson* v. *Adams,* 29 E. C. L. 371; *Kovacs* v. *Mayoras,* 175 Mich. 582; *Lehrer* v. *Elmore,* 100 Ky. 56; *Line* v. *Spies,* 192 Mich. 484; *McCormack* v. *Sweeney,* 40 N. E. 114; *M'Cabe* v. *Platter,* 6 Blackf. 405; *Martin* v. *Hooker,* 7 Coldw. 130; *Merrell* v. *Marshall,* 112 Ill. App. 450; *Morse* v. *Printing Co.* 124 Iowa, 714; *Norton* v. *Ladd,* 5 N. H. 203; *Pfister* v. *Press Co.* 138 Wis. 641; *Phillips* v. *Barber,* 7 Wend. 439; *Prime* v. *Eastwood,* 45 Iowa, 640; *Rex* v. *Horne,* Cowp. 627; *Roddy* v. *Gazette Co.* 163 Iowa, 416; *Southern Surety Co.* v. *Baglin,* 37 App. D. C. 24; *Smith* v. *Commercial Pub. Co.* — C. C. A. —, 149 Fed. 704; *Sheibley* v. *Washington,* 130 Iowa, 200; *Taylor* v. *Bond,* 88 N. E. 311; *Turner* v. *Hearst,* 115 Cal. 394; *Tresca* v. *Maddox,* 11 La. Ann. 206; *Tibbs* v. *Brown,* 2 Grant, Cas. 39; *Truman* v. *Taylor,* 4 Iowa, 425; *United States* v. *Piaza,* 133 Fed. 988; *Warner* v. *Baker,* 36 App. D. C. 493, 231 U. S. 593, 594; *Whitley* v. *Newman,* 70 S. E. 686; *Wright* v. *Schroeder,* 2 Curt. 540; *Williams* v. *Cawley,* 18 Ala. 209; *White* v. *Sun Pub. Co.* 164 Ind. 428; *Young* v. *Sheppard,* — Tex. —, 40 S. W. 62; 4 Bl. Com. 180; Newell, Defamation, § 84; Townshend, Libel & Slander, § 133, p. 166.

*Mr. E. F. Colladay, Mr. Frederick A. Ware,* and *Mr. John Ridout,* attorneys for the appellee:

1. The words, "shot and killed John Gillard while the latter was abusing his wife," are libelous *per se. Atwill* v. *McIntosh,* 120 Mass. 177; *Cerveney* v. *Chicago Daily News Co.* 139 Ill. 345; *Culmer* v. *Canby,* 101 Fed. 195; *Daily* v. *De Young,* 127

Fed. 491; *Emerson* v. *Miller,* 115 Iowa, 315; *Herrick* v. *Tribune Co.* 108 Ill. App. 244; *Moore* v. *Francis,* 121 N. Y. 199; *Morse* v. *Times-Republican Ptg. Co.* 100 N. W. 867; *Raymond* v. *United States,* 25 App. D. C. 555; *Shepherd* v. *Baer,* 96 Md. 153; *Shockey* v. *McCauley,* 101 Md. 461; *Taylor* v. *Carey,* 1 Minor (Ala.) 258; *Washington Times* v. *Downey,* 26 App. D. C.; *Williams* v. *Fuller,* 97 N. W. 246.

2. As to admission of evidence of plaintiff's condition in life, standing and reputation: Abbott, Trial Ev. 2d ed. pp. 847, 843; *Adams* v. *Lawson,* 17 Gratt. 250; *Bennett* v. *Hyde,* 6 Conn. 24; *Cox* v. *Strickland,* 101 Ga. 482; *Eastland* v. *Caldwell,* 4 Am. Dec. 668; *Enos* v. *Enos,* 135 N. Y. 609; *Evening Jnl. Co.* v. *Simon,* 77 C. C. A. 366, 147 Fed. 224, 203 U. S. 589; *Foot* v. *Tracy,* 1 Johns. 52; 2 Greenl. Ev. ¶ 275; *Harding* v. *Brooks,* 5 Pick. 247; *Klumph* v. *Dunn,* 66 Pa. 147; *Larned* v. *Buffington,* 3 Mass. 546; *McCalmont* v. *McClelland,* 14 Serg. & R. 359; *Morey* v. *Morning Journal Asso.* 123 N. Y. 207; *Post Pub. Co.* v. *Peck,* 199 Fed. 6; *Peltier* v. *Mict,* 50 Ill. 511; *Palmer* v. *Haskins,* 28 Barb. 95; *Press Pub. Co.* v. *McDonald,* 11 C. C. A. 155, 63 Fed. 238; *Ratcliffe* v. *Louisville Courier Journal Co.* 99 Ky. 377; *Russell* v. *Washington Post,* 31 App. D. C. 277; *White* v. *Newcomb,* 25 App. Div. 397; 25 Cyc. 482, 507, 508.

3. As to evidence of the condition of Mrs. Gillard's head and the tongs used in assaulting her: Abbott, Trial Ev. p. 839; *Handy* v. *Humphries,* 35 Ala. 617; *Palmer* v. *Haight,* 2 Barb. 210; 2 Whart. Ev. ¶ 1102.

4. As to exclusion as evidence of prior articles in defendant's and other newspapers: *Downey* v. *Brown,* 3 Colo. 571; *Hotchkiss* v. *Lothrop,* 1 Johns. 286; Newell, Slander & Libel, p. 1075; *Saunders* v. *Mills,* 6 Bing. 213; *Talbutt* v. *Clark,* 2 Moody & R. 312; *Tucker* v. *Lawson,* 2 Times L. R. 593; *Washington Herald* v. *Berry,* 41 App. D. C. 322.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

The first question presented is whether or not the publication was as a matter of law libelous *per se.* This is foreclosed by

our decision on the former appeal, which was binding on the lower court and is equally binding on this court, as the law of the case. The circumstances in which the subject was first presented to us have not been changed. The language construed in the declaration at that time and from which we drew the legal conclusion that it was libelous *per se* is the same language upon which we are asked to pass judgment now. Where this is so, the former judgment must be treated as closing the question, and prohibiting a re-examination of it on a second appeal. Unless this be true, litigation might become interminable. The authorities supporting our conclusion are well nigh unanimous. We cite but a few. In *Messinger* v. *Anderson*, 96 C. C. A. 445, 171 Fed. 785, Judge Lurton, afterwards Mr. Justice Lurton, speaking for the circuit court of appeals, said: "That every question of law or fact which was before this court upon the first writ of error and decided by its opinion was thereby conclusively settled, both for the court below and for this court upon subsequent writs of error, is not open to serious debate. That matters not decided upon the first writ are open for consideration in the lower court upon a second trial is, of course, true *. * *: but so far as questions of fact or law are specifically decided, and the cause remanded for further proceedings, the court below is not at liberty to re-examine any such decided matters, but must proceed in conformity to the mandate as interpreted by the opinion of this court,"—citing many authorities.

Judge Van Devanter, when sitting as a circuit judge, gave utterance to similar language in *Brown* v. *Lanyon Zinc Co.* 102 C. C. A. 497, 179 Fed. 310: "We are requested," he said, "to reconsider our prior ruling that no infringement resulted from the use of the Cappeau type of furnace, with the rabble operating mechanism in an open or uninclosed space underneath the main roasting chamber, but this we may not do. That ruling turned upon the interpretation of the claim in suit and is now a part of the law of the case, whether it was right or wrong. It was adhered to after due consideration of a timely petition for a rehearing; and the circuit court, as in duty bound, has respected and enforced it in the subsequent proceedings. True, it was made upon an appeal from an interlocutory decree grant-

ing an injunction, but that did not render it less obligatory upon the circuit court, and does not except it from the settled rule that propositions once decided by an appellate court are not open to reconsideration in that court upon a subsequent appeal or writ of error. *Smith* v. *Vulcan Iron Works,* 165 U. S. 518–525, 526, 41 L. ed. 810–812, 813, 17 Sup. Ct. Rep. 407; *Re Potts,* 166 U. S. 263–267, 41 L. ed. 994–996, 17 Sup. Ct. Rep. 520; *United States* v. *California & O. Land Co.* 148 U. S. 31–38, 37 L. ed. 354–359, 13 Sup. Ct. Rep. 458; *Re Sanford Fork & Tool Co.* 160 U. S. 247–255, 40 L. ed. 414–416, 16 Sup. Ct. Rep. 291; *Illinois* v. *Illinois C. R. Co.* 184 U. S. 77–93, 46 L. ed. 440–447, 22 Sup. Ct. Rep. 300." See also *Central Trust Co.* v. *Wabash, St. L. & P. R. Co.* 144 Fed. 476; *Roth* v. *Mutual Reserve L. Ins. Co.* 89 C. C. A. 262, 162 Fed. 282; *Development Co.* v. *King,* 96 C. C. A. 139, 170 Fed. 923; *Mutual Reserve Fund Life Asso.* v. *Ferrenbach,* 7 L.R.A.(N.S.) 1163, 75 C. C. A. 304, 144 Fed. 342.

Nor is it material that the former decision of this court was a judgment reversing the lower court and directing a new trial. Justice Lurton in the *Messinger Case, supra,* quotes with approval the following language from Mr. Justice Field upon this point: "If, upon the construction of the contract supposed, this court reverses the judgment of the court below, and orders a new trial, the decision is equally conclusive as to the principles which shall govern on the retrial. It is just as final to that extent as a decision directing a particular judgment to be entered is as to the character of such judgment. The court cannot recall the case, and reverse its decision, after the remittitur is issued. It has determined the principles of law which shall govern, and, having thus determined, its jurisdiction in that respect is gone; and, if the new trial is had in accordance with its decision, no error can be alleged in the action of the court below." *Leese v. Clark,* 20 Cal. 387; see also *Mutual L. Ins. Co.* v. *Hill,* 193 U. S. 551, 48 L. ed. 788, 24 Sup. Ct. Rep. 538; *Western U. Teleg. Co.* v. *Toledo,* 58 C. C. A. 16, 121 Fed. 734; *Stoll* v. *Loving,* 120 Fed. 806; *Tyler* v. *Magwire,* 17 Wall. 254, 21 L. ed. 576; *Young* v. *Frost,* 1 Md. 394; *Haley* v. *Kilpatrick,* 44 C. C. A. 102, 104 Fed. 647; *Orient Ins. Co.* v. *Leonard,* 57

C. C. A. 176, 120 Fed. 808; *Mathews* v. *Columbia Nat. Bank,* 40 C. C. A. 444, 100 Fed. 393; *Chicago Theological Seminary* v. *People,* 189 Ill. 439–452, 59 N. E. 977.

It is next urged that the court erred in refusing to submit to the jury the truth of the publication as pleaded. But defendant had withdrawn his plea of justification, and was not therefore entitled to have the jury pass upon it. We quote from the record: "The Court: Mr. Lambert's plea of justification is that the words were true, not with the meaning attached to them in the declaration, which is murder, but in some other sense in which they were used, so that so far as the plea of justification is concerned there would not seem to be any attempt at justification. The defendant does not claim that it was murder in fact. It does not claim so in its plea, and does not in its position now taken. The only question now is ———" "Mr. Lambert (interrupting): On the general issue." This is equivalent to a statement by Mr. Lambert, counsel for defendant, that the only question then before the court was on the general issue. Under that issue it was not competent to prove justification, for the latter must be specially pleaded. *Brown* v. *Burnett,* 10 Ill. App. 279; *Douge* v. *Pearce,* 13 Ala. 127; *Brickett* v. *Davis,* 21 Pick. 404; *Watson* v. *Hamilton,* 6 Rich. L. 75.

Appellant says that the court erred in admitting over its objection evidence that the reputation of the plaintiff was "excellent;" that his social standing was "that of a high-toned, honorable gentleman in that community;" and that he had "an honorable, upright reputation among his neighbors, considered as a man of first-class character, a man of broad charities," and that witness never heard his reputation for peace and good order questioned. The point of the objection is that, since the law presumed that plaintiff's reputation was good, it was not competent for him to offer testimony upon the question until it was assailed by proof from the defendant. There is authority for the proposition that a plea of justification is an attack upon the reputation of the plaintiff, and that under such circumstances he may, in making out his case in chief, offer proof upon that subject. *Cooper* v. *Phipps,* 24 Or. 357–362, 22 L.R.A. 836, 33 Pac. 985; *Ratcliffe* v. *Louisville Courier-Journal Co.*

99 Ky. 416, 36 S. W. 177; *White* v. *Newcomb,* 25 App. Div. 397, 49 N. Y. Supp. 704; *Cox* v. *Strickland,* 101 Ga. 482, 28 S. E. 655; Abbott, Trial Ev. 2d ed. 847 et seq.   Whether or not the plea of justification, without more, constitutes an attack upon plaintiff's character, we are of the opinion that the evidence was properly received.   The plaintiff was entitled to recover compensatory damages; that is, damages which would compensate for the loss which he sustained by the publication of the libel.   Anything less would not give him what the law provides he should have.   In order that the jury might have before it all the data from which to determine what would constitute adequate damages for the plaintiff, it was necessary that it should have full knowledge in respect of the nature of his reputation.   Unless it did, it could not measure it correctly, and therefore could not say with accuracy how much it had been damaged.   The law presumes that the plaintiff's reputation was good, but he was not willing to accept that as the proper standard by which to measure it.   He said that it was more than good,— it was "excellent," "first-class."   To the mind of the jury the word "good" might indicate an ordinary reputation, while "excellent" and "first-class" would describe something much better : and if the plaintiff possessed such a reputation he was entitled to have the jury know it.   If the presumption of law gave him what was equivalent to an excellent or first-class reputation, then the evidence objected to afforded him nothing more than the presumption gave him, and appellant has no cause for complaint.   If, on the other hand, it did not give him as much as the testimony did, he was entitled to the latter, because otherwise the jury would lack the evidence on which to base a verdict that would adequately compensate him.   The courts, as well as the text-writers, are not in harmony upon this subject; but we think the weight of authority is in favor of the right of the plaintiff to prove as a part of his case in chief the nature and extent of his reputation.

The circuit court of appeals for the second circuit, speaking through Judge Lacombe, went into the question at great length, reviewing with care the English and American authorities upon the subject, and reached the conclusion that it was competent

for the plaintiff in his affirmative case to offer testimony bearing upon his character. In that action as in this, it was urged that the testimony was offered "for the purpose of bolstering up the case before the jury [in order that] if the jury should be informed that defendant in error was a man of very high position in the world, they could only pay him for his wounded feelings by a verdict out of all proportion to that which would be given to an ordinary citizen." But the court answered that the testimony was competent, saying: "We are of opinion that the weight of authority is clearly in support of the proposition that the condition in life of the plaintiff may properly be given in evidence in chief to aggravate damages. * * * While it is true that plaintiff's character and reputation morally are presumed to be good, and therefore need not be proved by him to be such unless attacked, there seems no sound reason for holding that he may not prove his station in society as part of his testimony in chief, in view of the statement in *Gilman* v. *Lowell,* 8 Wend. 573, 24 Am. Dec. 96, which (despite the decision in *Prescott* v. *Tousey,* 18 Jones & S. 12) is still the law of this state, that 'persons in different stations would be differently damnified by the same slander.'" *Press Pub. Co.* v. *McDonald,* 26 L.R.A. 531, 11 C. C. A. 155, 26 U. S. App. 167, 63 Fed. 238–244. Later a similar question came before the same court in the suit of the *New York Evening Journal Pub. Co.* v. *Simon,* 77 C. C. A. 366, 147 Fed. 224. The testimony in that case was quite like the testimony in the case at bar. The court, speaking of it, said: "The only other exception is to the admission of evidence that the 'general reputation of the plaintiff was very high as an officer and a man.' It is not necessary again to discuss this question. We considered the whole subject and the many conflicting decisions of different courts in *Press Pub. Co.* v. *McDonald,* 26 L.R.A. 531, 11 C. C. A. 155, 26 U. S. App. 167, 63 Fed. 238, and held that such general testimony, not, however, extended to minuter details, might properly be put in proof." A petition for writ of certiorari was made in this case to the Supreme Court of the United States, and denied. 203 U. S. 589, 51 L. ed. 330, 27 Sup. Ct. Rep. 776. In the case of *Post Pub. Co.* v. *Peck,* 120 C. C.

A. 1, 199 Fed. 6, the circuit court of appeals for the first circuit, speaking through Judge Aldrich, said: "We do not agree with the position of the defendant, that it was not open to the plaintiff, in his affirmative case, to show his standing in, and capacity to earn through, his profession, because under the theory which governed the trial, a theory which is thought to be the right one, the plaintiff's reasonable damages would, in a measure, directly and peculiarly depend upon these elements." Citing 2 Greenl. Ev. § 275; and the *McDonald* and *Simon Cases,* supra; also *Chesley* v. *Tompson,* 137 Mass. 136.

In *S. S. McClure Co.* v. *Philipp,* 96 C. C. A. 86, 170 Fed. 910–912, a libel case, the plaintiff was allowed to testify in making out his case in chief that the publication complained of caused him to "feel worse." The court said: "In the case at bar, with all the facts relating to the plaintiff's domestic, social, and business relations established, argument as to effect of the false charges upon his mind might, it would seem, have been presented as effectively without the testimony complained of as with it. Before coming to the question of damages, the jury necessarily had to reach the conclusion that the defendant had falsely accused the plaintiff of being a criminal, and the conclusion that he had suffered great mental anguish from such a charge would naturally follow. But what may be considered by the jury may be proved, and where the question relates to the mental suffering of the plaintiff no witness can speak *ex cathedra* but the plaintiff himself." Applying the rule of that decision to the case at bar, may it not be said that, since the jury might consider the presumption that plaintiff possessed a good reputation, there was no error in receiving proof of it? In *Stark* v. *Publishers George Knapp & Co.* 160 Mo. 529, 61 S. W. 669, it was held that the good character of plaintiff is admissible in chief as bearing upon the question of damages. * * * To the same effect see *Larned* v. *Buffington,* 3 Mass. 546, 3 Am. Dec. 185; *Enos* v. *Enos,* 135 N. Y. 609, 32 N. E. 123; *Morey* v. *Morning Journal Asso.* 123 N. Y. 207, 9 L.R.A. 621, 20 Am. St. Rep. 730, 25 N. E. 161; *Russell* v. *Washington Post,* 31 App. D. C. 277, 14 Ann. Cas. 820; *White* v. *Newcomb,* 25 App. Div. 397, 49 N. Y. Supp. 704; *Bennett*

v. *Hyde,* 6 Conn. 24; *Adams* v. *Lawson,* 17 Gratt. 250, 94 Am. Dec. 455; *Fountain* v. *Boodle,* 3 Q. B. 5, 114 Eng. Reprint, 408, 2 Gale & D. 455. It is earnestly contended by appellant that, while there are many decisions holding that plaintiff in his case in chief may offer testimony as to his station in life, only a few hold he may give evidence of his general reputation. But why the distinction? Every rule of law is supposed to rest upon reason. The reason which permits plaintiff to offer in chief testimony relating to his station in life would support his offering testimony bearing upon his general reputation. In each case he is seeking to aggravate his damages beyond what they would be if he was required to rest upon the presumption of law alone; and if it is proper for him to do it in the one case it seems to us it must be proper for him to do it in the other. The libel attacks plaintiff's character. Why should he be required to wait until the defendant, the wrongdoer, sees fit to offer evidence in support of his assault, before he, the plaintiff, may offer evidence in vindication of his good name? *Bennett* v. *Hyde,* 6 Conn. 24. And in the *Adams Case,* 17 Gratt. 250, 94 Am. Dec. 455, the author of the opinion observed: "It does not appear to me to be a satisfactory answer to say that the plaintiff ought to stand upon the presumption which the law makes, in the absence of evidence to the contrary, that his character is good. * * * I am not aware of any case in which a mere presumption that a fact exists, which is liable to be rebutted, is held to preclude a party in whose favor the presumption is made from introducing evidence to prove that the fact is really so. And besides, the character of the plaintiff is always impeached when the slander or libel imputes crime or moral delinquency." In the leading case of *Press Pub. Co.* v. *McDonald,* supra, the testimony referred to general social standing only, but in the *Simon Case, supra,* decided later by the same court, the witness said that "the general reputation of the plaintiff was very high as an officer and a man,"—quite similar to the testimony objected to in this case,—and the court held that it was properly received on the authority of the *McDonald Case,* thus indicating that there was no distinction, so far as the rule of admissibility was concerned, between testimony bearing upon

the general reputation of a plaintiff and testimony having rela-
tion to his business or social standing, and we think there is
none.

In view of what we have said and the decisions referred to,
there was no error in admitting the testimony offered by plain-
tiff in making out his affirmative case with respect to his reputa-
tion.

It is also asserted that there was error in admitting testimony
showing the condition of Mrs. Gillard's head as a result of the
attack made upon her by her husband, because, as appellant says,
it was of an inflammatory and prejudicial nature. The death
of Gillard referred to in the libelous publication occurred in
these circumstances: He lived near the residence of the plain-
tiff at Merry Mills, Virginia. His wife, to escape from a sav-
age attack which he had made upon her, sought protection in
the home of the plaintiff. Gillard pursued and again attacked
her, beating her brutally over the head with a pair of tongs.
Chaloner interfered to protect her. He held a revolver in his
hand. Gillard seized the pistol and endeavored to turn it upon
his wife. In the struggle that ensued, the weapon was dis-
charged and Gillard killed. At the time the testimony com-
plained of was received, the defendant's plea of justification was
still in the case. Plaintiff was therefore required to show that
the publication was not true, for he had been challenged to do so
by the plea of justification. In doing this, it was necessary to
describe the circumstances in which the killing took place. The
testimony referred to was a part of that description, and was
properly admissible. "Where the defendant relies on justifica-
tion, plaintiff may show the circumstances of the transaction
charged relevant to the issue of his innocence, including his own
declaration as part of the *res gestæ.*" Abbott, Trial Ev. p. 839;
*Palmer* v. *Haight,* 2 Barb. 210; *Gandy* v. *Humphries,* 35 Ala.
617; 2 Whart. Ev. § 1102; *Langton* v. *Hagerty,* 35 Wis. 150.

The next and final error assigned is that the court erred in
excluding copies of the Washington Post, Washington Times,
and the Evening Star, containing accounts of the tragedy result-
ing in the death of Gillard, and plaintiff's connection therewith,
published on the 17th of March, 1909, sixteen days before

the libelous publication appeared.  It is claimed that these articles should have been admitted as tending to mitigate the damages.  We will first consider the article in the Washington Post, which is published by the appellant.  This article represented the plaintiff as saying that he was aiming the revolver at Gillard at the time it was discharged.  In his testimony he denied it.  If the article was admitted in evidence it would be a contradiction of that testimony.  As it was clearly hearsay it could not be received for that purpose, and since it was offered as a whole there was no error in rejecting it.  But apart from this, the article in the Post had no sufficient tendency to mitigate damages.  If A published an article charging B with murder, and the next day or soon thereafter published another article retracting the statement and stating that there was no truth in it, he would thereby tend to lessen the evil effect produced in the minds of the readers of the first article, and consequently the damage done to the reputation of the person libeled by it; but we do not think that an article published sixteen days before the appearance of the libelous publication would have any effect to dilute the poison carried to the minds of the readers of the subsequent article.  The publication tendered in evidence was not of course a retraction, because it preceded the libelous article in point of time.  It gave an account of the killing, which indicated that Chaloner was not guilty of murder.  The subsequent or libelous article charged him with murder.  We do not think that the first article, published as it was sixteen days before, had any tendency to show that the last article was not true.  It was too remote.  To say that it had such tendency would be to indulge in a conjecture too unsubstantial to be of practical value in the administration of justice.  Appellant has called our attention to no decision or text which supports its contention, and we have not been able to find any.  Many of the authorities which appellant cites state that the circumstances surrounding or attending the publication of the libel may be given, and with this we are disposed to agree.  But the rejected publication could not be said, with any regard to the ordinary meaning of words, either to surround or attend the publication of the libelous article in

this case, since sixteen days had intervened between the two events.

By a parity of reasoning the articles in the Times and Star, being of the same general nature as the one in the Post, and published on the same remote date, were properly excluded. As bearing upon the admissibility of the articles in the Times and Star the decision of this court in *Washington Herald Co.* v. *Berry,* 41 App. D. C. 322, is in point. The Herald Company was charged with libel. It offered publications in the Times and Star relating to the occurrences out of which the libel case arose which had appeared the day before the libelous article was issued, but they were excluded; this court saying through the then chief justice: "That other papers may have published articles relating to the plaintiff and his controversy, whether libelous or not, afford no justification for defendant's publication." See also Newell, Slander & Libel, 1075.

The record not disclosing any error, the judgment of the lower court is affirmed, with costs. *Affirmed.*

A writ of certiorari from the Supreme Court of the United States was filed in this Court February 5, 1918.