DENNIS F. FLAGG *vs.* MOSES A. DOW.

A recorded lease of land by T. for eight years, for a rent payable quarterly, provided that all buildings which the lessee should erect on the land should be appraised at the end of the term, and the appraised value be paid by the lessor or her successors or assigns to the lessee or his assigns; or that the lessor or her representatives might allow the lessee to retain the premises "till said sum without interest is realized by the lessee at the rent stipulated;" or might, at any time after part of said sum had been liquidated, pay the balance and resume possession. *After erecting buildings on the land, the lessee, by an assignment never recorded, conveyed to* F. all his title; and T. conveyed all her title to her sons, taking back a lease of the premises for her life with "power to underlet" them. At the end of the eight years T. made to F. a new lease of the premises for ten years for the same ground-rent, describing him as the assignee of the first lease, and containing a similar provision concerning the ultimate disposal of the buildings. No appraisal was then or ever made of the buildings; nor did F. ever reserve any part of the rent, but paid it to T. until she died. At her death, five years only of the term of ten years had expired. One year afterwards, her sons, having meanwhile received from F. payment of the rent each quarter, conveyed all their title to D., "subject to the rights and incumbrances, if any, belonging to or created by the tenants now on said premises." D. received the conveyance without notice, other than such as may be inferred from the record of T.'s lease to F., that F. was the assignee of the original lessee, and, after giving F. notice of said conveyance and to quit, evicted him from the premises and tore down the buildings. *Held,* that the provision in the original lease concerning a holding after the expiration of the eight years created a tenancy for years, which was not surrendered by the making of the second lease, and which continued after the second lease was concluded by *T.'s death; and that* F. *was entitled to recover from* D. *a sum equal to what was the* value of the buildings at the end of the eight years, less the amount of the rent from that time to the time of his eviction.

TORT for the eviction of the plaintiff from a lot of land fronting upon Charlestown Square in Charlestown, and for the value of certain buildings situated thereon. The case was submitted to the full court on agreed facts, by which it appeared that the defendant, claiming under deeds of Ebenezer Twycross and John Twycross, grantees of Martha Twycross, dated April 7 1866, gave to the plaintiff on April 10 written notice of these deeds, and to quit the premises in seven days, and afterwards, "in the latter part of April and early in May," forcibly dispossessed him, and tore down the buildings and erected on the site thereof part of a large public house. The plaintiff, who had been in occupation of the premises ever since September 11 1857, when he entered thereon as assignee of the firm of S. T & G. T. Fowler, who were holding under a lease from Martha

Flagg *v.* Dow.

Twycross dated June 1, 1852, contended that these acts of the defendant were in violation of his rights as such assignee. All the facts which are material are stated in the opinion. It was agreed that, if the plaintiff was entitled to recover, the defendant should be defaulted and the case sent to an assessor to assess damages under the direction of the court; otherwise, judgment should be entered for the defendant.

*J. L. English & N. St. J. Green,* for the plaintiff.

*C. Robinson, Jr.,* for the defendant.

CHAPMAN, J. The plaintiff's right to maintain this action depends upon his title under Martha Twycross. Her first lease to the Fowlers was for the term of eight years from January 1, 1852; and it contained a provision that the lessees should put up a building fronting on the adjoining square; that at the end of the lease the buildings placed or erected on the land by the lessees should be appraised, and the appraised value paid in money by the lessor, or her successors and assigns, to the lessees, or their assigns, or the lessor or her representatives might allow the lessees to retain the premises " till the said sum without interest is realized by the lessees at the rent stipulated," which was fixed at two hundred and fifty dollars per annum, payable quarterly. It further provided that the lessor or her representatives might, at any time after a part of said sum should have been liquidated, pay the balance in money and resume the premises. That part of the lease which provided that the buildings should be paid for was in substance an agreement that, at the end of the term of eight years, such buildings as might be erected by the tenant should remain as part of the real estate, and that the tenant might continue his occupancy for such further term as to receive pay for them at their value, but with a condition that the lessor might terminate this occupancy at any time by payment of the sum remaining due for the buildings. It was therefore something more than a mere covenant running with the land. The continued occupancy would be a tenancy. There was sufficient certainty as to the beginning, continuance and termination of this tenancy to make it a tenancy for years; and as the lessee, by erecting the buildings, was entitled to enjoy it without any

further assurance, and as any form of expression which indicates the intent of the lessor that there shall be such tenancy is sufficient to constitute a lease for years, this part of the instrument is to be regarded as a lease for a further term, after the expiration of the term of eight years, in case the buildings referred to should be in existence, but subject to be defeated in whole or in part by payment of the appraised value of the buildings.

The Fowlers assigned their lease to the plaintiff in September 1857, after having erected the buildings, and in August 1859, about five months prior to the expiration of the eight years, Martha Twycross conveyed the land to her two sons. The lease being acknowledged and recorded, the sons took their title subject to it; and the fact that the assignment to the plaintiff was not recorded does not affect the plaintiff's title. The provision for the continued occupation of the premises by the lessee or his assigns till the buildings should be paid for, either in money or by the application of the stipulated rent to that purpose, would of itself authorize him to remain as tenant, and he needed no further assurance to enable him to continue his tenancy till he should receive his pay for the buildings.

But, at the same time that Martha Twycross conveyed to her sons, they gave her back a lease for life, for a nominal rent, with a grant of full power and authority to underlet the premises or any part thereof, and to employ agents or attorneys to make and renew leases, collect rents, make repairs, and generally to manage the property. The transaction was evidently a family arrangement for the settlement of her estate; for the consideration of the deed is a thousand dollars and the love and affection she had for her sons, and the money named was but a small part of the value of the property. But the court do not deem this important in the present case.

Afterwards, in pursuance of a parol agreement by which the defendant is not affected, she made a new lease to the plaintiff, dated November 1, 1859, but not executed till after the expiration of the eight years, for the term of ten years from January 1 1860, at the same ground-rent of two hundred and fifty dollars and with provisions similar to those of the first lease as to the

buildings.   But, as she had only an estate for life at that time, this lease was subject to be terminated by her death.   All the powers granted to her in the lease for life by her sons must be construed as terminating with her estate.   She died about January 6, 1865.

Although the taking of a new lease is generally to be regarded as the surrender of an existing lease, yet it is not always so. In *Van Rensselaer* v. *Penniman*, 6 Wend. 568, it was held to be a confirmation of a former lease.   This construction was given to the second lease in order to secure to the lessee a compensation for buildings which he had erected on the premises, prior to the execution of the second lease, under a covenant that he should be paid for them at the end of the term.   In this case, as the term of eight years had expired before the second lease was given, no part of that term could be surrendered.   The second lease could only operate upon that part of the first which related to the occupation for the purpose of obtaining compensation for the value of the buildings.   It did not purport to supersede the first lease in respect to that occupation, except by postponing the time of its commencement.   This the parties might do as between themselves, but they could not, by their agreement, affect the rights of other parties.   If Martha Twycross had retained her title in fee simple, or if she had not deceased, the arrangement would have been valid; but she had conveyed the title to her sons, and taken back from them a mere lease for her own life.   She could not bind their estate by any grant extending beyond the term of her own life.   After her death her sons continued to receive the rent which was due under the second lease, till April 1866.   The effect of this receipt of rent as between them and the plaintiff need not be considered, as the estate of the defendant cannot be affected by it.

On the 4th and 7th of April 1866, the sons severally conveyed their respective interests in the land to the defendant.   As the plaintiff's rights under the second lease had terminated by the death of Martha Twycross, nothing remained to him but his rights under the first lease; and by the terms of the lease he had a right of occupation, as has already been stated, commencing

January 1, 1860, and terminating when, at the stipulated rate of rent, he should receive a full compensation for the value of the buildings. The buildings were not appraised; but the appraisal was not an essential part of the contract. It was merely a convenient method of ascertaining the value of the buildings. Any other convenient method might be substituted.

In April 1866 the defendant entered and took possession and expelled the plaintiff, without making any effort to ascertain the value of the buildings or tendering their value to the plaintiff, and having no knowledge of the assignment by the Fowlers to the plaintiff other than such as may be inferred from the fact of the record of the lease of Martha Twycross to the plaintiff, in which it was set forth that the buildings belonged to the lessee " by assignment of a former lease of which this is a substantial renewal." This act was a tort, and he is liable in this action to pay the plaintiff the amount which he was entitled to receive for the buildings as against him. This amount may be ascertained by finding the value of the buildings on the first of January 1860, and deducting from it the amount of the rents from that time to the time when the defendant entered. The balance, with interest thereon from the time of the defendant's entry to the time of judgment, will be the amount which the plaintiff is entitled to recover. The fact that, instead of retaining these rents in order to reimburse himself for the value of the buildings, the plaintiff paid them over to Martha Twycross, cannot avail him as against the defendant. The clause in the deeds of John and Ebenezer Twycross to the defendant, making the defendant's title " subject to the rights and incumbrances if any, belonging to or created by the tenant, now on said premises," must be construed to relate merely to such rights and incumbrances as affected the legal title. It may possibly limit the operation of the grantor's warranty, but does not enlarge the estate or rights of the plaintiff.

Under the agreement of parties, the judgment is to be for the plaintiff, and the cause is to be referred to an assessor to ascertain the amount of damages.