BARNEY & Others *v.* WINONA & ST. PETER RAIL
ROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR·
THE DISTRICT OF MINNESOTA.

Submitted January 7, 1886.—Decided March 1, 1886.

Inadvertent expressions in an opinion of the court, which are not material to
the decision of the case, are not decisions of the court within the general
rule that what is decided in a cause on appeal is not open to reconsidera-
tion in the same case on a second appeal on similar facts.

In the construction of land grant acts in aid of railroads, "granted lands" are
those falling within the limits specially designated, the title to which at-
taches as of the date of the act of Congress, when the lands are located by
an approved and accepted survey of the line of the road filed in the Land
Department; but "indemnity lands" are lands selected in lieu of parcels
lost by previous disposition or reservation for other purposes, the title to
which accrues only from the time of their selection.

The provision in § 3 of the act of March 3, 1865, that any lands granted to
Minnesota by the act of March 3, 1857, which might be located within the
limits of the extension made by said act of 1865 to the original grant made
by said act of 1857, should be deducted from the full quantity of lands
granted by the act of 1865, applies to "granted lands" of the prior grant.
falling within the six-mile limit, and not to possible indemnity lands which
might be subsequently acquired.

*Winona & St. Peter Railroad Company* v. *Barney*, 113 U. S. 618, explained.

This case was before the court at October Term, 1884, 113
U. S. 618. The questions which arose in the execution of the
mandate, and which were brought up by the second appeal,
are stated in the opinion of the court.

*Mr. Gordon E. Cole* for appellants.

*Mr. Thomas Wilson* for appellee.

Mr. JUSTICE FIELD delivered the opinion of the court.

This case was before us at the October Term, 1884. By an
act of Congress passed March 3, 1857, a grant of land was
made to Minnesota, then a Territory, to aid in the construc-
tion of certain railroads, including one from Winona, a town

on the Mississippi River, to a point on the Big Sioux River, in the present Territory of Dakota. 11 Stat. 195. The grant was of every alternate section designated by odd numbers, for six sections in width on each side of the road, subject to certain exceptions, not important to be here mentioned, with a right to select indemnity lands within fifteen miles from the line of the road. In May following the legislature of the Territory authorized a company, previously incorporated, to construct and operate this road; and, to aid in its construction, granted to the company the interest and estate, present and prospective, of the Territory and future State, in the lands ceded by the act of Congress, together with the rights, privileges and immunities conferred by it.

In 1858 * the Territory became a State and was admitted into the Union; and under proceedings for the foreclosure of a mortgage executed by the company, it became, before March, 1862, reinvested with the estate in the lands and the rights and privileges it had granted. In March, 1862, its legislature passed an act transferring the lands, property, franchises and privileges, with which it had thus become reinvested, to the Winona and St. Peter Railroad Company, which soon afterwards commenced the construction of the road. By the act of Congress of March 3, 1865, the quantity of land granted by the act of 1857 was increased to ten sections per mile, with an enlargement of the limits within which indemnity lands might be selected from fifteen to twenty miles. 13 Stat. 526. The third section provided that any lands which had been granted to Minnesota for the purpose of aiding in the construction of any railroad which might be located within the limits of the extension, should be deducted from the "full quantity" granted by the act. The full quantity was the four additional sections, and we held that the reservation was merely a legislative declaration of that which the law would have pronounced independently of it, inasmuch as a prior grant of the

---

* In the opinion in 113 U. S. 621, the admission by a misprint is stated to have been in 1857. The constitution of the State was adopted in that year, but the admission was on May 11, 1858. 11 Stat. 285.

same property must necessarily be deducted from a subsequent one in which it is included.

In October, 1867, the company agreed with the plaintiffs, upon sufficient consideration, to convey to them as many acres of land, previously granted by Congress to Minnesota, as it should receive from the State by reason of the construction of its road already made, estimated to be 105 miles, but in fact only 102 miles and a fraction of a mile. This suit was brought to enforce the specific performance of this contract, and the only question between the parties was as to the quantity of land to be conveyed under it.

By the act of 1857, lands were also granted to Minnesota to aid in the construction of the road of the Minnesota (Minneapolis) and Cedar Valley Railroad Company, afterwards the Minnesota Central Railroad Company (Laws of Minnesota, Extra Session of 1857, 20, and Special Laws of 1863, 137), and that road intersected the road of the defendant between Rochester and Waseca; and lands of that company at the intersection were located within the limits of the extension of four sections made by the act of 1865.

The court below, however, held that, for the part of the defendant's road constructed after the act of 1865, the plaintiffs were entitled, under their contract, to ten full sections per mile, without any deduction for the lands which were located at the intersection of the road with the road of the Minnesota Central Railroad Company, and within the grant for the construction of the latter. It was accordingly adjudged that the plaintiffs were entitled, in addition to what had been voluntarily conveyed to them, to a conveyance of 197,111 acres and a fraction of an acre, and a decree to that effect was entered. The case being brought to this court, that decree, at the October Term, 1884, was reversed, and the cause sent back to the court below in order that the proper deduction might be made by reason of the interference of the two grants, and the elder grant be deducted from the extension made by the act of 1865, so far as it was located within that extension. 113 U. S. 618–629.

In speaking of the two grants we said of the first one, that of 1857, that it was one by description, that is, of land in place

and not one of quantity. It was of particular parcels of land designated by odd numbers for six sections on each side of the road; that is, of particular parcels of land lying within certain defined lateral limits to the road and described by numbers on the public surveys. The grant of the four additonal sections by the act of 1865 was also a grant of land in place. The intention of Congress was to enlarge the first grant from six to ten sections per mile; the additional four to be taken in like manner as the original six, and subject to the same limitations, and to others that had been or might be prescribed, with a right to select indemnity lands within twenty miles instead of fifteen. The act did not purport to change the character of the first grant, but to increase its quantity. We said, however, that the grant of these additional sections might be regarded as one of quantity—an inadvertence for which the writer of that opinion, who is also the writer of this one, is alone responsible. The statement was not at all material to the decision, which was that a deduction should have been made by reason of the intersection of the two grants, so far as the prior grant was located within the extension.

We recognize the rule that what was decided in a case pending before us on appeal, is not open to reconsideration in the same case on a second appeal upon similar facts. The first decision is the law of the case, and must control its disposition; but the rule does not apply to expressions of opinion on matters the disposition of which was not required for the decision. When the case went back, the court below seems to have been embarrassed by the erroneous description of the character of the grant of the four additional sections, and to have felt obliged to deduct from the amount originally decreed the number of acres which, prior to March 3, 1865, had passed to Minnesota within the designated limits of the grant to aid the construction of the road of the Minnesota Central Railroad Company, and also the number of acres which had been taken beyond them within the indemnity limits of fifteen miles. In this construction of the reservation made by the third section of the act of 1865, we think the court erred. The reservation from the four sections was of land previously granted, which

was located within them. The previous grant was of lands in place, for it was of alternate sections designated by odd numbers, for six sections in width on each side of the road, and that portion of it was reserved from the subsequent grant which fell within the four new sections, also land in place.

In the construction of land grant acts, in aid of railroads, there is a well-established distinction observed between "granted lands" and "indemnity lands." The former are those falling within the limits specially designated, and the title to which attaches when the lands are located by an approved and accepted survey of the line of the road filed in the Land Department, as of the date of the act of Congress. The latter are those lands selected in lieu of parcels lost by previous disposition or reservation for other purposes, and the title to which accrues only from the time of their selection. It is these "granted lands" of the prior grant falling within the six-mile limit that, in our opinion, are reserved, and not the possible indemnity lands which might be subsequently acquired. These granted lands of the prior grant being in place could be readily deducted from the four sections, also in place, whenever the roads of the two companies intersected, and the lands fell within the four sections. The quantity thus granted is found by the special masters appointed by the court to be fifteen thousand acres and $\frac{45}{100}$ of an acre. This quantity only, in addition to the lands used for the track of the road of the Winona and St. Peter Railroad Company, and for depots and other purposes necessary and incident to its operation, should, therefore, be deducted from the number of acres, to a conveyance of which from the company the plaintiffs, by the decree of the court below at its December Term, 1880, were adjudged to be entitled.

*The decree will, therefore, be reversed, and the cause be remanded with directions to enter a new decree comformable to this opinion.*