## CONNETT et al. v. CITY OF JERSEYVILLE.
### No. 6923.

Circuit Court of Appeals, Seventh Circuit.
Feb. 9, 1940.

Rehearing Denied March 7, 1940.

1016

Emil J. Verlie, J. F. Schlafly, Jr., and C. Dana Eastman, all of Alton, Ill., for appellant.

W. J. Chapman, of Alton, Ill., R. Allan Stephens, of Springfield, Ill., and Isaac D. Snedeker, of Jerseyville, Ill., for appellees.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

Defendant-appellant is a municipal corporation of the state of Illinois and several years ago became the owner of its water system by virtue of an Illinois statute enacted in 1899. [1] The legislative act authorized a city to acquire a water system and to pay for the same by issuance of certificates of indebtedness. The city was authorized to mortgage the water system to secure payment of the water certificates and to include in the mortgage "such provisions and conditions as are reasonably necessary to fully secure the payment of said water certificates." The defendant passed appropriate ordinances which included a schedule of rates to be charged and which approved the issuance of a form of a mortgage to secure certificates of indebtedness. The mortgage provided that the rates fixed by ordinance "will, if it becomes necessary to do so, be increased * * * ." The certificates of indebtedness secured by the mortgage were issued by defendant.

Defendant defaulted in payment of principal and interest of the certificates of indebtedness and in 1924 foreclosure suit was instituted in the District Court by the mortgage trustee. During the pendency of the foreclosure suit a receiver was appointed to operate the water works and the receiver has continued to operate the same. In 1929 a decree of foreclosure was entered and in 1931 the property was offered for sale pursuant to the decree but no bids were received.

In 1931 the Illinois legislature amended the act of 1899. One of the amendatory provisions contained the requirement that "rates charged for water by such city * * shall be sufficient at all times to pay the

---

[1] Ill. Session Laws 1899, p. 104, Smith-Hurd Stats.Ill. c. 24, §§ 440–445.

cost of operation, maintenance, provide an adequate depreciation fund and pay the principal of and interest upon all revenue bonds issued under this act." The amendatory act also authorized any holder of a bond or bonds, "either [to] in law or in equity, by suit, action, mandamus or other proceeding, [to] enforce and compel performance of all duties required by this Act, including the making and collecting of sufficient water rates for that purpose and the application of income and revenue thereof." [2]

In 1936 the mortgage trustee filed a supplemental bill in the original foreclosure suit praying that the rates charged for water for private and public use be increased to produce income sufficient to pay the cost of operation and maintenance, provide an adequate depreciation fund and pay the amount found due in the foreclosure decree. This supplemental bill based the right of the trustee to such relief on Section 4 of the Act of 1899 and the provisions of the mortgage as affected by the amendatory act of 1931.

The District Court sustained a motion to dismiss the supplemental bill; and upon appeal to this Court the judgment of dismissal by the District Court was reversed. [3] This Court held that Section 4 of the Act of 1899 authorized the city to obligate itself in the mortgage to increase rates, if it should become necessary to do so in order to pay the certificates. It was also held that the amendatory act of 1931 was applicable and gave the plaintiff a right to utilize the remedies provided therein. [4]

After our mandate issued the District Court required the defendant to answer and the defendant's answer set up that the District Court had no power or jurisdiction to increase rates for the reason that the fixing of public utility rates is a legislative and not a judicial act. The District Court sustained the motion of the plaintiffs to strike out the foregoing matter.

The District Court thereupon heard evidence and made findings of fact and conclusions of law. The court found that the plaintiffs were entitled to an increase in the water rates of the consumers, both public and private, in such amounts as would be "designed to produce operating revenues that will permit and enable the payment of necessary operation and maintenance expenses; and maintenance of adequate reserves for depreciation; the payment within a reasonable number of years, of the principal amount found due by said decree, to-wit: $233,971.92 together with interest thereon at the rate of 5% per annum from the date hereof; and the payment, within a reasonable number of years, of the interest now accrued and unpaid on said principal amount."

A supplemental decree was thereafter entered by the District Court fixing specific increased rates for all types of service and assessing the cost of proceeding against defendant. The decree did not order the municipality of Jerseyville to determine and put into effect rates which would be adequate to take care of the cost of operation, maintenance and depreciation and to pay the principal and interest obligations, but the decree required the receiver to charge the rates fixed by the court without any action by the city council.

The only point urged on appeal by defendant-appellant is that the District Court, by reason of limitations on its power as a federal court, did not possess the power to fix rates as it did and order the same to be put into effect by its receiver. But the plaintiffs raise the question of the propriety of any consideration of the issue of jurisdiction for the reason, as urged by plaintiffs, that "the holding of this court in 96 F.2d 392 that the District Court had jurisdiction to grant the relief prayed and the denial of the city's petition for rehearing, which urged the 'legislative power argument' is now the law of the case."

In our former decision we held that the combined effect of the Illinois act of 1899, of the ordinances passed in conformity thereto, of the provision in the mortgage deed binding the city to increase rates as required, and of the amendatory act of

[2] Smith-Hurd Stats. c. 24, § 444.

[3] Connett v. City of Jerseyville, 7 Cir., 96 F.2d 392, 400.

[4] The opinion of this Court in Connett v. City of Jerseyville, supra, concluded as follows: "We think that appellants were entitled to an increase of water rates pursuant to the provisions of the trust deed, and that they were entitled to a hearing for the determination of the amount. The decree of the District Court is reversed and the cause is remanded with instructions to overrule appellee's motions to dismiss the amended petitions and supplemental bill of complaint, and to require appellee to answer by a day fixed by the District Court."

1931 was to authorize judicial action to compel the defendant municipality to increase rates to the extent necessary to provide for the cost of operation, maintenance and depreciation, and to pay the principal and interest obligation under the certificates of indebtedness. No point is made on this appeal as against the foregoing. The precise questions presented now are (1) whether the District Court, as a federal court, has jurisdiction under the federal law to prescribe the rates which it did and order the same to be put in effect by its receiver, and (2) whether defendant-appellant is prevented from raising that question by the rule of *the law of the case*.

■ The District Court construed the language of the closing paragraph of our previous opinion (supra, page 1017) to hold that it had jurisdiction to conduct a hearing *and* determine the amount of increase in water rates. The question of jurisdiction was not directly raised in the appeal proper, but was advanced in the petition for rehearing. It is squarely raised on this appeal, and regardless of the effect of our previous decision we are of the opinion that "when the jurisdiction of the court as a federal court is called in question, liberality of practice should be indulged, to the end that the question may be indubitably heard and determined."[5]

The doctrine of the "law of the case," when applicable, does not carry the same consequences as the rule of res judicata. The Supreme Court in Southern Railway Company v. Clift[6] stated that one, the law of the case, directs discretion, the other supersedes it and compels judgment. And the Supreme Court further amplified its meaning by the statement that "in one it is a question of power in the other of submission." In Messinger v. Anderson,[7] the Supreme Court stated that "in the absence of statute the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." The Supreme Court, however, has pointed out in Hartford Life Ins. Co. v. Blincoe[8] that "omissions do not constitute a part of a decision and become the law of the case, nor does a contention of counsel not responded to."

■ The expressions of the Supreme Court and of inferior federal courts leave no question that federal courts do not apply the doctrine of "the law of the case" as a rule of law limiting the power of the court to reopen what has been decided but rather as an expression of "the practice of courts generally to refuse to reopen what has been decided * * *." Also, federal courts recognize that the law of the case does not include determination of all questions which were within the issues of the case and which, therefore, might have been decided.

■ In view of the foregoing we conclude that defendant-appellant is entitled to have us consider the question of the District Court's jurisdiction, under the United States Constitution and federal laws, of the subject matter presented by the supplemental bill of the trustee and intervening petition of the certificate holders' protective committee praying that the water rates for both public and private uses be increased.

The propositions relied upon by defendant are (1) that the fixing of public utility rates for public and private use of water constitutes an exercise of legislative power and that the exercise of such power is precluded by the first and third articles of the United States Constitution; and (2) that the Johnson Act[9] prohibited the District Court from increasing the water rates in this case. It will be unnecessary to consider the latter.

■ Undoubtedly federal District Courts do not have jurisdiction to exercise the ordinary rate making power which the legislatures of various states have conferred upon ratemaking bodies. The Supreme Court has declared many times in substance that "District Courts * * * are without authority to prescribe rates, both because that is a function reserved to the state, and because it is not one within the judicial power conferred upon them by the Constitution."[10]

But plaintiffs insist that the defendant is in error in treating the action of the

---

5 City and County of Denver v. Denver Tramway Corporation, 8 Cir., 23 F.2d 287.

6 260 U.S. 316, 319, 43 S.Ct. 126, 67 L.Ed. 283.

7 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152.

8 255 U.S. 129, 136, 41 S.Ct. 276, 278, 65 L.Ed. 549.

9 Act May 14, 1934, Ch. 283, § 1, 48 Stat. 775, 28 U.S.C.A. § 41(1).

10 Central Kentucky Natural Gas Co. v. Railroad Comm. of Kentucky, 290 U. S. 264, 271, 54 S.Ct. 154, 157, 78 L.Ed. 307.

District Court as presenting "a case of 'fixing rates in the ordinary sense of the term.'" Plaintiffs state their position as follows: "This is a case of enforcing a contract obligation; of increasing rates within the limits of standards previously fixed by the legislative power; of increasing rates in accordance with legislative commands; and of a Court instructing its receiver as to the rates to be charged by such receiver. The argument that the exercise by the District Court of these distinctly judicial functions constitutes an exercise of legislative power by the Court is wholly without merit."

To appraise the merits of plaintiffs' contention we must consider the effect of our previous decision. It necessarily follows from that decision that the defendant-municipality is under a legal duty to adopt a schedule of rates which will produce sufficient income to pay the cost of operation and maintenance of its water system and to provide an adequate depreciation fund and to pay the principal of and interest upon its indebtedness to plaintiffs. The foregoing duty was imposed by the act of 1899 and by the terms of the mortgage which was executed under authority of said act. Also we held that as a result of the amendatory act of 1931 the holders of the water certificates had a right to enforce and compel performance of the duty of the making and collecting of sufficient water rates for the foregoing purposes "either in law or in equity, by suit, action, mandamus or other proceeding." The foregoing language is broad enough in meaning to include the proceeding below in which the District Court determined a schedule of rates and ordered the receiver to put them into effect. Consequently, the District Court properly proceeded unless, as urged by defendant, the District Court was without jurisdiction to take such action by reason of limitations imposed by the Constitution of the United States. And, as indicated above, this presents the question of whether or not what the court did constituted the legislative act of rate making within the decisions of the Supreme Court.

Under the law of Illinois, as stated in Springfield Gas & Electric Co. v. City of Springfield, [11] a municipally owned utility is owned and operated by the municipality "in its capacity of a private corporation, and not in the exercise of its power of local sovereignty." But the Supreme Court of Illinois pointed out that the legislature had delegated to the municipalities the power of regulatory control of municipally owned plants in the same sense that it had delegated to the Public Utilities Commission the right to regulate and fix charges for privately owned public utilities. The fact that a municipality regulates and fixes the rates of the utility which it owns does not change the legal theory that the municipality is a regulatory instrumentality of the state. The Illinois Supreme Court also stated that "municipally owned public utilities are not exempt from * * * the making of rates and charges that are reasonable and just and uniform for the same amount and character of service;" and the court further stated that "All their rates and charges fixed by ordinances or resolutions are subject to review by the courts to a like extent as the rates fixed by the Public Utilities Commission for public utilities privately owned, although the matter of review may be had under a different law and by a different remedy."

We think it is clear from the discussion in the opinion of the Illinois Supreme Court that the governing body of the municipality, when fixing utility rates or charges, is performing a public function of the municipality and acting as a rate making body as distinguished from its private function as owner and operator of the utility. In this connection it is interesting to note the comment of the Supreme Court of the United States in the case of Springfield Gas & Electric Co. v. Springfield [12] when it was reviewing the decision of the Supreme Court of Illinois above referred to.

"But the fact that the municipality owned the plant for which its council fixed the rate was supposed to disqualify its officers, at least when other plants were submitted to the judgment of strangers. But a city council has no such interest in the city's electric plant as to make it incompetent to fix the rates. Whatever the value of the distinction between the private and public functions of the municipality, the duty of its governing board in this respect as we have said is public and narrowly fixed by the act."

As indicated above, plaintiffs maintain that the action of the District Court in fixing rates was not legislative but judicial.

[11] 292 Ill. 236, 126 N.E. 739, 745, 18 A.L.R. 929.

[12] 257 U.S. 66, 42 S.Ct. 24, 25, 66 L. Ed. 131.

In support of their contention they cite and rely upon Guardian Savings & Trust Co. v. Road Improvement District No. 7. [13] The recital of facts in that case discloses that the legislature had authorized the creation of a road improvement district; that one legislative act had authorized the assessing of a benefits tax sufficient to pay the estimated cost of improvement and had made the tax a lien upon the land. After the assessment had been made by the district another legislative act confirmed the assessment of benefits. The tax assessed was sufficient to pay the entire estimated cost of the improvement and was to be paid in annual installments not to exceed 10% for any one year. The legislative act also provided that if any bond or coupon should not be paid within thirty days of its maturity it was the duty of the local chancery court to appoint a receiver to collect the taxes and pay what was due, and power was given to direct the receiver to foreclose the lien on the land. There was a default and the trustee for the bondholders brought suit in the Federal District Court. The District Court entered a decree for the plaintiff and directed the appointment of a receiver to collect the taxes theretofore levied to the extent necessary to pay the outstanding bonds and coupons. The Circuit Court of Appeals reversed the District Court and the Supreme Court reversed the Circuit Court of Appeals. We quote the following from the opinion of the Supreme Court: "The ground on which jurisdiction was denied by the Circuit Court of Appeals was that the power to levy and collect taxes was a legislative function of the state which could not be usurped by a federal court. But while that may be true as a general doctrine, it cannot apply when a state has authorized and confirmed an assessment and a mortgage of it as security for bonds that the public is invited to buy, and has provided in terms for a collection by a receiver appointed in equity if there should be a default. There is no longer any legislative act to be done, and there is no usurpation of powers in following the course provided by state law."

In the foregoing case the amount to be paid by the property owner had been fixed by legislative action, either directly by the legislature or by the district under delegated power; and the amount of the assessed tax was mortgaged as security for the payment of the bonds. In a very real sense there was no longer any legislative act to be done and the action of the court through a receiver was not materially different from the action usually taken by receivers to collect claims when the source of payment is known and has been designated by law or by contract.

■ We understand from the record that a receiver has been operating the water system of Jerseyville for several years and has been collecting from the consumers the amounts due under the existing rates, that is, the amounts due as previously fixed and determined by legislative action. It would seem that the receiver has been doing for several years substantially what the Supreme Court in Guardian Savings & Trust Co. v. Road District, supra, held that the receiver could do in that case. In the Guardian Savings & Trust Co. opinion the Supreme Court stressed the fact that the state both had authorized and confirmed an assessment and a mortgage of it as security for bonds, and had provided, in case of default, for a collection by a receiver appointed in equity. In the instant case we think that it is accurate to say that the state has authorized and confirmed, through the action of the municipal council, the existing schedule of rates for water users and has authorized a mortgage of the income as security for the payment of the certificate indebtedness. Also, under our earlier decision, the state has authorized, and by the amendatory act of 1931 has imposed upon the City of Jerseyville the duty of making any increase in the rates which may be necessary to take care of all expenses incident to the operation and maintenance of the water system and to produce sufficient additional income to take care of the principal and interest of the certificate indebtedness. But as respects a schedule of increased rates, it seems that the characteristic rate making function remains to be exercised. Some person, or body, with authority from the State of Illinois to determine and promulgate water rates must act before it can be said that the state has authorized and approved a schedule of rates. Under the Illinois law the municipality of Jerseyville, acting through its council and by ordinance, is the sole rate making authority for the City of Jerseyville. And until the municipality acting through its council performs its public function of rate making and issues a new schedule of rates, it cannot be said

---

[13] 267 U.S. 1, 45 S.Ct. 201, 202, 69 L.Ed. 487.

that the legislative act of rate making has been performed.

It is true, as stated by plaintiffs, that the legislature of Illinois has fixed the standards which must serve as both guide for, and limit upon, the action of any agency which determines and promulgates new rates. The legislative standard, or guide, for the municipal council, however, does not differ in nature and purpose from the standard which the legislature of Illinois provides for the state rate making body. When the municipal council fixes increased rates, and by official action makes them legally effective, it has exercised the power delegated to it by the Illinois legislature and has completed the legislative process. The District Court applied the standards set by the Illinois legislature and, in the form of a judicial decree promulgated a schedule of water rates for the City of Jerseyville and directed its receiver to make them effective. As a matter of substance we cannot distinguish what the District Court did from what the municipal council of Jerseyville would have done if it had prepared and promulgated a new schedule of rates in accordance with the standards fixed by the legislature of Illinois. And in our opinion the District Court was acting legislatively in the same sense that any rate making body acts legislatively when it performs its function of rate making under delegated power and subject to standards fixed by the superior legislative body.

We conclude that under the decisions of the Supreme Court of the United States the District Court was without power to determine a schedule of water rates for the City of Jerseyville and by judicial decree make them effective.

It does not follow, however, from what we have said that the District Court was without jurisdiction to exercise its judicial powers in aid of the enforcement of the rights of the holders of certificates of indebtedness in accordance with the provisions of the amendatory act of 1931. We have already noted that under our previous decision the Municipality of Jerseyville was under a legal duty to charge such rates for water as should be required to pay the cost of operation, maintenance, provide an adequate depreciation fund and pay the principal of and interest upon the certificates of indebtedness; and we also held that the amendatory act of 1931 (Smith-Hurd Stats.Ill. c. 24, § 443) gave to the holders of these certificates the right to enforce and compel performance of such duty. We are of the opinion that the District Court has jurisdiction to give such relief. The language of the amendatory act must be construed to confer rights on interested persons and not merely to extend the jurisdiction of local courts. In Guardian Savings & Trust Co. v. Road District, supra, it was suggested that the chancery power which was being invoked in the federal court was confined to the state court named in the statute, and the Supreme Court disposed of this suggestion as follows: "But the decisions have done away with such a limitation and it was not relied upon by the Circuit Court of Appeals. * * * The state law is not merely an enlargement of the remedial powers of a local court as in Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763, it recognizes the inadequacy of the remedy at law and is an attempt to give to purchasers of bonds the assurance of adequate relief against shortcomings that experience has taught the business world to apprehend. We see no reason why it should not succeed. * * *"

We are satisfied that the District Court has jurisdiction to determine the amount of principal and interest due on the certificates and to enforce and compel defendant's performance of its duties under the amendatory act by a decree which will require the defendant to adopt a schedule of rates which will produce sufficient income to pay the costs of operation, maintenance, provide an adequate depreciation fund and pay the interest upon the certificates of indebtedness and discharge the principal within a reasonable period of time.

The decree of the District Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

The decree is reversed.