**WASHINGTON SPORTSERVICE, INC.,**
**Appellant,**

**v.**

**The M. J. ULINE COMPANY, Appellee.**
**No. 16829.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 7, 1962.

Decided Nov. 16, 1962.

Petition for Rehearing En Banc Denied En Banc and Petition for Rehearing Before the Division Denied Jan. 25, 1963.

Mr. Harry L. Ryan, Jr., Washington, D. C., for appellant.

Mr. Leonard Braman, Washington, D. C., with whom Messrs. David G. Bress and J. H. Krug, Washington, D. C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and BASTIAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

This case is before us for the second time. On the first appeal, brought by Washington Sportservice, we reversed the judgment of the District Court and remanded for further proceedings consistent with our opinion.[1] Then, as we directed it to do, the District Court made a finding on the factual issue which had not been resolved the first time. What to do next became a problem because the trial judge was not sure he understood the further directions of our opinion, and the parties differed as to the scope of the remand and as to what issues were open for adjudication by the District Court, Although he expressed doubt as to the correctness of his course,[2] the trial judge decided to regard the remand as so general in nature that it left him free to pronounce judgment as he saw fit on all issues originally presented. Accordingly, he did so,[3] and then entered judgment for Uline, as had been done before.

Sportservice appeals, arguing that the District Court misinterpreted our former opinion. It contends that the remand was for the determination of one factual issue and that the District Court's determination thereof should have controlled its decision, as all other issues had been decided explicitly or implicitly by this court's opinion and were not open for adjudication after remand. Our question now is whether the judgment appealed from is consistent with our opinion on the first appeal. In considering that question, we think it desirable first to summarize the issues initially submitted to and decided by the District Court and the issues which were presented to this court on the appeal from the first judgment. This will require a brief statement of the proceedings in both courts.

By contract dated November 14, 1941, M. J. Uline Company conveyed to Jacobs Brothers for a term of years the refreshment concession in its indoor sports arena. In 1945, desiring to install extensive new facilities, Jacobs Brothers began negotiations for a longer term. Through an exchange of letters, the parties agreed that the term which was to end June 15, 1947, would be extended one year for each one thousand dollars expended by the lessee in improvements. Pursuant to the agreement, Jacobs Brothers spent nearly $40,000 on the project. On or about September 20, 1946, with Uline's consent, the lease as amended was assigned to Washington Sportservice, which has since operated thereunder.

Uline notified Sportservice that it desired to terminate as of May 19, 1955. When Sportservice challenged its right to do so, Uline filed this suit July 27, 1955, asking the District Court to declare, *inter alia*, (a) the amended contract unenforceable as indefinite, as lacking in mutuality, and as based upon an inadequate consideration; (b) as an alternative, that the amended contract was good for one year only under § 45–819, D.C.Code (1951),[4] and that thereafter Sportservice held under a tenancy by sufferance which could be terminated at any time by either party, upon notice.

At the conclusion of the proceedings, the District Court made, among others, the following findings of fact:

"5. Correspondence passed between the parties in July and August of 1945 which altered the agreement

1. Washington Sportservice, Inc. v. M. J. Uline Co., 107 U.S.App.D.C. 277, 276 F.2d 523 (1960).

2. The District Judge said in a colloquy with counsel:
   "It's been up to the Court of Appeals once and it's got to go back again. I'm not sure that I'm doing just what the Court of Appeals directed me to do, so if they will appeal it and proceed with due diligence, I will continue the injunc-

tion [which kept Sportservice in possession]. * * *"

3. We shall later discuss more in detail the issues finally decided by the District Court and the question whether they were open for decision by it.

4. That section is as follows:
   "An estate expressed to be from year to year shall be good for one year only."

of November 14, 1941, in order to provide that the defendant would construct and install a new counter in the arena and, further, that the defendant would, as set out in its letter of July 31, 1945,

" 'proceed with such other and improvements and installations of equipment and uniforms as you (the plaintiff) may desire * * * with the understanding that our agreement is renewed and automatically extends itself for such yearly periods as are required to amortize at the rate of $1000 a year the amounts expended by us (the defendant) for such improvements and installations. To amplify, if we (the defendant) expend $2000 our agreement would be considered extended until June 15, 1949, and the same extension procedure is to apply to any similar expenditures that we may make from time to time with data, of course, being submitted to you as you may direct.'

"6. This modification of the lease agreement of November 14, 1941, is set forth in defendant's letter of July 31, 1945, which was accepted by the plaintiff on August 2, 1945. But on August 11, 1945, the parties signed a memorandum on the face of the letter of August 2, 1945, stating 'this letter is cancelled out by M. J. Uline and L. M. Jacobs.' "

"11. The contract was terminated between the parties on June 15, 1951 * * *."

Among the court's conclusions of law are these:

"2. The contract of November 14, 1941, as amended in July and August of 1945, is a lease of real property and the tenancy created is an estate from year to year.

"3. Plaintiff terminated the estate from year to year on June 15, 1951, and the tenancy thereafter became an estate by sufferance."

"6. The concession contract of November 14, 1941, as amended, is unenforceable and has been since June 15, 1951. It is indefinite and lacks mutuality from that date."

Consequently, judgment was entered in favor of Uline, providing that "The contract of lease and the modifications thereof * * * is hereby adjudged to have been unenforceable after June 15, 1951."

It is apparent from its conclusions of law that the District Court adjudged the amended contract unenforceable after June 15, 1951, because it had concluded the amended contract had created an estate from year to year which Uline had a right to, and did, terminate as of that date; that is to say, there was thereafter no agreement at all and Sportservice held only by sufferance.

From this judgment Sportservice took the first appeal. It contended that, contrary to the holding of the District Court, it held "an estate for years, not susceptible of unilateral termination where it was not in breach of any term or condition, and *as to which no reservation for termination was had in its inception.*" (Emphasis added.) Uline asserted that, as held by the District Court, the amended contract lacked mutuality, was indefinite, and provided for an estate from year to year which later became a tenancy by sufferance. In the course of its brief, Uline said:

"All parties agreed that the contract of 1941 was a leasehold agreement. The Court below concurred and found that the initial agreement was an estate for years which by its terms expired on June 15, 1947.

"The crux of the litigation is the legal effect of the amendments of July and August, 1945 * * *.

"It is appellee's contention that the letter of July 31, 1945, and *particularly that portion which permitted Uline to terminate the term of the lease* upon the performance by it

of a prescribed condition created an estate by sufferance.[5] * * * " (Emphasis added.)

Thus the parties presented to this court these questions: 1. Did the amended contract lack mutuality? 2. Was it so indefinite as to be unenforceable? 3. Did it create a tenancy from year to year, which could be, and was, unilaterally terminated by Uline so that thereafter Sportservice held merely by sufferance? 4. Or did the amended agreement create a tenancy for a term of years which, in the absence of a breach by Sportservice, could not be terminated by Uline unless it contained an express agreement for such unilateral cancellation?

Confronted with these contentions, this court said at the outset of the first opinion:

"* * * The question now before us is whether the agreement allows a cancellation at the option of the Uline Company *before the expiration of the term* and, if so, under what conditions." (Emphasis added.)

Implicit in this statement of the question, particularly in view of the words we have italicized, is the conclusion of this court that the amended contract did not create a tenancy from year to year, which unquestionably Uline could have cancelled; but that it created a tenancy for a term of years which Uline could cancel *before the expiration of the term* only if it had a contractual right to do so. That is the reason we stated the question as we did.

This is borne out by the fact that, having noted that one copy of the amendatory letter of July 31, 1945, contained a sentence permitting Uline to terminate the amended agreement, and that another copy of the same letter did not contain that sentence, we said:

"Whether Uline Arena has the right to terminate the refreshment contract on payment of the expenditures by the lessee, less amortization of the installations made by Sportservice, depends, it appears to us, upon whether the termination sentence is in the agreement as finally settled by the parties. No finding of fact was made as to this issue. Consequently we set aside the judgment of the District Court and remand the case for a determination as to the content of the contract under which the Sportservice made the installation. * * * "

Thus far, it seems quite clear that this court had rejected the theories that the amended contract was void for indefiniteness, for lack of mutuality or lack of adequate consideration, or that it created an estate from year to year unilaterally terminable upon notice; that instead we had found it to be a lease for a term of years terminable by Uline only if the right to terminate had been reserved in the amendatory letters; that we remanded solely for the District Court to make a factual finding, which it did not make in the first instance, as to whether the termination sentence "is in the agreement as finally settled by the parties."

Confusion was caused at the second trial by the last sentence of our opinion, immediately following the excerpt just quoted, which reads thus:

"* * * With the determination of the issue as to the content of the contract, the District Court on this remand will be free to enter such judgment as it may be advised as to the obligations between the respective parties."

The trial judge interpreted this sentence as giving him *carte blanche* to make new findings of fact on all issues, to make new conclusions of law, and to enter the judgment which seemed proper to him, regardless of how he resolved the one factual issue for the decision of which

---

5. Of course, Uline did not mean to say the amendatory letter of July 31, 1945, "created an estate by sufferance," but that Sportservice held by sufferance after the alleged termination date of the tenancy created by the amendatory letter, which Uline contended was a tenancy from year to year.

we had remanded the case, and regardless of the fact that we had rather plainly said that he should render the judgment required by his resolution of that factual issue.

So, although the trial judge found as a fact that the termination sentence was not in the agreement as finally settled by the parties, he made other factual findings substantially as before, but reached different conclusions of law. For instance, he concluded that the original contract of November 14, 1941, created an estate for years to end June 15, 1947, but that the amendatory agreement of 1945 "did not create an estate for years because of its indefiniteness and uncertainty" and lack of mutuality; that after June 15, 1947, Sportservice was a tenant by sufferance.[6] Hence the District Court entered a judgment in Uline's favor.

This rationale misconstrues the intent of our opinion. It will be remembered that at the outset thereof we said the question was whether the amended agreement permitted Uline to cancel before the expiration of the term. Then we said the answer to that legal question depended upon the answer to a factual question which had not been answered by the District Court, viz., was the termination sentence in the final agreement? The only logical inference is that we were thus saying, "If the termination sentence was in the agreement, Uline had the right to cancel; if it was not, Uline had no right to cancel." So, when we said we "remand the case for a determination as to the content of the contract under which the Sportservice made the installation," we were remanding only for the District Court to make a finding as to whether the termination sentence was in the final agreement. It seems to us, therefore, that the remand was for that purpose only; that it was specific, not general.

It is said, however, and the District Court evidently agreed, that the remand was shown to be general by the final sentence in the opinion, which for convenience we quote again:

"* * * With the determination of the issue as to the content of the contract, the District Court on this remand will be free to enter such judgment as it may be advised as to the obligations between the respective parties."

If this sentence were construed to order a general remand as to all issues, as Uline contends it should be, it would contradict what had been already expressed in the body of the opinion. But the first clause of the sentence shows that the District Court was to be free to enter judgment in accordance with its answer to the factual question, whatever that answer might be. The sentence means simply this: Upon remand, the District Court is to determine whether the termination sentence was in the agreement and will be free to adjudicate the rights of the parties either way, according to its determination of that factual issue.

As the District Court on remand found as a fact that the termination sentence was not in the final agreement, it should have declared that Uline did not have the right it claimed to cancel before the expiration of the term. The judgment appealed from will therefore be reversed, and the case will be remanded for the entry of a judgment to that effect.

Reversed.

BAZELON, Chief Judge (dissenting).

The threshold question concerns the application of the "law of the case" doctrine. I think the court applies this doctrine incorrectly.

The Uline Arena was opened early in 1941 for the production of shows, indoor

---

6. As has been said, our first opinion by necessary implication rejected similar conclusions in holding the amended contract was a lease for a term of years, subject to cancellation by Uline only if it had the contractual right to terminate. Our first opinion is, therefore, the law of the case as to these matters, and on remand the District Court was not free to reach these conclusions.

athletic contests and other entertainments. On November 14, 1941, Jacobs Brothers and Uline entered into a contract, to expire June 15, 1947, under which Jacobs Brothers obtained exclusive concession rights for the sale of refreshments, novelties, programs and program advertising, in return for specified percentages of the concessionaire's gross sales receipts. By an exchange of letters in July and August of 1945, the parties amended the contract "in order to provide that the defendant would construct and install a new counter in the Arena and * * *":

> "proceed with such and other improvements and installations of equipment and uniforms as you [Uline] may desire * * * with the understanding that our agreement is renewed and automatically extends itself for such yearly periods as are required to amortize at the rate of $1,000 a year the amounts expended by us [Jacobs Brothers] for such improvements and installations. To amplify, if we expend $2,000 our agreement would be considered extended until June 15, 1949, and the same extension procedure is to apply to any similar expenditures that we may make from time to time with data, of course, being submitted to you as you may direct."

In 1946 Jacobs Brothers assigned their interest to Washington Sportservice, our present appellant.

Sportservice spent $37,500 for concession facilities constituting capital improvements to the Arena. On May 19, 1955, Uline notified Sportservice of its desire to terminate the contract. Sportservice denied Uline's right to do so, and Uline filed its complaint asking for declaratory judgment and other relief on July 27, 1955.

Uline has insisted throughout upon the right unilaterally to terminate the amended agreement because (1) if viewed as a lease it creates a statutory tenancy by sufferance which is terminable at any time by written notice (D.C.Code §§ 45–820, 45–904 (1961)); and (2) if viewed as a contract it is unenforceable for want of "mutuality." Sportservice, on the other hand, has urged that the amended agreement is a lease for a number of years (D.C.Code § 45–818 (1961)), made definite by mutually desired expenditures pursuant to the amended agreement.

The District Court in which the case was first litigated adopted Uline's contentions.[1] Sportservice thereupon brought its first appeal to this court.

In that appeal Uline urged an additional argument for the first time: that it had the right to terminate the contract by virtue of a termination clause included by the parties themselves in the 1945 amendments.[2] This court found that the record disclosed no clear finding on whether the termination clause was, in fact, included. Without expressly determining whether the agreement was unilaterally terminated for the reasons found below, this court set aside the judgment and remanded the case for a finding respecting the termination clause in "further proceedings consistent with the opinion of this court." Washington Sportservice, Inc. v. M. J. Uline Co., 107 U.S.App.D.C. 277, 276 F.2d 523 (1960).

On remand, no new evidence was offered. The District Court, by another judge, found that the termination clause was not included. Except in respect to matters not pertinent here, the court

---

1. On the ground that the contract was binding to the extent that it had been performed prior to June 15, 1951, and in order to prevent unjust enrichment of Uline, the court ordered Uline to pay $37,500 less $6,000 "which is the reasonable depreciation thereon to June 15, 1951." On that date Uline had terminated the contract by inserting "which expires June 15, 1951" after the word "contract" in its written consent of May 2, 1951 to an assignment by Sportservice to a wholly-owned subsidiary.

2. The disputed clause read: "If Uline Arena wishes to discontinue contract, they may do so by paying to Jacobs Brothers the unamortized part of expenditures after June 15, 1947."

adopted the earlier findings [3] and considered that the term of the extension was "indefinite"; that Sportservice was holding over under an expired lease (the original 1941 agreement had expired in 1947); that the tenancy was therefore one by sufferance, D.C.Code § 45–820 (1961), which could be terminated at any time upon written notice, D.C.Code § 45–904 (1961); [4] that Uline terminated the tenancy by filing suit in 1955; [5] and that the amended contract lacked mutuality. [6]

The present appeal followed. Sportservice urges at the outset that our decision in the former appeal must be read as rejecting the grounds upon which the District Court held the amended agreement unilaterally terminable; and that our remand limited the District Court's consideration to the new ground, namely, whether that agreement included the clause authorizing unilateral termination. And since the District Court on remand found that clause was not included in the agreement, Sportservice contends the court was bound by the "law of the case" to render judgment in its favor.

I think, however, that the "law of the case" doctrine does not support this contention.

It is indisputable as a general proposition that the lower court is bound by the mandate as the law of the case and is without power to consider questions which the mandate laid at rest. [7] Although, at the appellate level, the rule is merely a rule of practice rather than a limitation on our power, [8] we depart from it only in a clear case "showing that the earlier adjudication was plainly wrong and that application of the rule would work manifest injustice * * *." [9]

The doctrine as thus stated determines the weight to be attached to the law of the case, but "does not tell us what issues were laid at rest." [10] In deciding

3. The District Court did change some of the findings of fact made by the earlier District Court. See Dictograph Products Co. v. Sonotone Corp., 230 F.2d 131 (2d Cir. 1956); Epstein v. Goldstein, 110 F. 2d 747 (2d Cir. 1940); Communist Party of the United States v. Subversive Act. Con. Bd., 102 U.S.App.D.C. 395, 402–403, 254 F.2d 314, 321–322 (1958); Wilson v. Newburgh, 42 App.D.C. 407 (1914); 5 Moore's Federal Practice §§ 52.06 [2], 52.13 (1951). But the changes are pertinent only to the issue of the amount of restitution awarded to appellant. Since neither party on this appeal has challenged the District Court's restitution award, we need not consider the issue.

4. In order to avoid unjust enrichment, the court awarded Sportservice $37,500 cost minus $10,000 "reasonable amortization" to the time of filing suit.

5. Cf. note 1 supra.

6. Lack of mutuality was apparently based on a "finding of fact" that "it was the understanding of the parties * * * that defendant could make * * * [improvements] * * * at any future time and in any amount that it saw fit, and that every time it expended a thousand dollars, the lease would be extended one year." Cf. text of amending clause, supra p. 1.

The first District Court based lack of mutuality on a conclusion of law that appellant "is not bound to perform the services incident to the concession contract and may cease to render the same at any time according to its whim or wish without * * * notice * * * and without any penalty."

7. Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); In re Sanford Fork & Tool Co., 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414 (1895); Mayflower Hotel Stock P. Com. v. Mayflower Hotel Corp., 89 U.S.App.D.C. 171, 193 F.2d 666 (1951); Washington Post Co. v. Chaloner, 47 App.D.C. 66 (1917), reversed on other grounds, 250 U.S. 290, 39 S.Ct. 448, 63 L.Ed. 987 (1919); Warner v. Grayson, 24 App.D.C. 55 (1904).

8. Davis v. Davis, 68 App.D.C. 240, 96 F. 2d 512 (1938); Messenger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912).

9. Brown v. Gesellschaft fur Drahtlose Tel., M.b.H., 70 App.D.C. 94, 104 F.2d 227 (1939).

10. Federal Communications Comm'n v. Pottsville Broadcasting Co., 309 U.S. 134, 140–141, 60 S.Ct. 437, 440, 84 L.Ed. 656 (1940).

what issues are laid at rest by an appellate court decision, there is a distinction between an affirmance and a reversal. As the Supreme Court put it in a leading case:

> "When a case is presented to an appellate court it * * * may order a reversal without entering into any inquiry or determination of other questions. While undoubtedly an affirmance of a judgment is to be considered an adjudication by the appellate court that none of the claims of error are well founded—even though all are not specifically referred to in the opinion—yet no such conclusion follows in case of a reversal. * * * *Hence the rule is that a judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided.*" [11]

Omissions,[12] contentions of counsel not responded to,[13] and obiter dicta [14] do not constitute bases from which the law of the case may properly be inferred. These principles are well settled.[15]

In light of these principles, I examine our prior opinion herein. First we said:

> "The question now before us is whether the agreement allows a cancellation at the option of the Uline Company before the expiration of the term and, if so, under what conditions." [276 F.2d 523.]

As the majority today recognizes, there were several other questions before us in the earlier appeal in addition to the stated question whether the *agreement itself* provided for cancellation. By "the question now before us" I think we meant "the only question we now consider and decide." After a partial statement of the facts, we said:

> "Whether Uline Arena has the right to terminate the refreshment contract on payment of the expenditures by the lessee, less amortization of the installations made by Sportservice, depends, it appears to us, upon whether the termination sentence is in the agreement as finally settled by the parties. No finding of fact was made as to this issue."

The right of termination upon payment of expenditures less amortization was precisely what the disputed termination clause provided. (Note 2 supra.) Whether Uline could exercise the right depended upon a finding of fact whether the parties included the termination clause in their final agreement. And the record lacked this essential finding.[16]

11. Mutual Life Ins Co. of New York v. Hill, 193 U.S. 551, 553–554, 24 S.Ct. 538, 48 L.Ed. 788 (1904), emphasis supplied.

12. Hartford Life Ins. Co. v. Blincoe, 255 U.S. 129, 136, 41 S.Ct. 276, 65 L.Ed. 549 (1921).

13. Ibid.

14. Barney v. Winona etc., R. Co., 117 U.S. 228, 231, 6 S.Ct. 654, 29 L.Ed. 858 (1886).

15. Communist Party of the United States v. Subversive Act. Con. Bd., 102 U.S. App.D.C. 395, 402–403, 254 F.2d 314, 321–322 (1958); Christoffel v. United States, 94 U.S.App.D.C. 168, 214 F.2d 265, cert. denied, 348 U.S. 850, 75 S.Ct. 75, 99 L.Ed. 670 (1954); Mayflower Hotel Stock P. Com. v. Mayflower Hotel Corp., 89 U.S.App.D.C. 171, 193 F.2d 666 (1951).
Hayat Carpet Cleaning Co. v. Northern Assur. Co., 69 F.2d 805 (2d Cir. 1934 (L. Hand, J.)); Liberty Nat. Bank v. Bear, 4 F.2d 240 (4th Cir.), cert. denied, 268 U.S. 693, 45 S.Ct. 512, 69 L.Ed. 1160 (1925); Seagraves v. Wallace, 69 F.2d 163 (5th Cir. 1934); Reynolds Spring Co. v. L. A. Young Industries, 101 F.2d 257 (6th Cir. 1939); Connett v. City of Jerseyville, 110 F.2d 1015 (7th Cir. 1940); Des Moines Terminal Co. v. Des Moines Ry. Co., 52 F.2d 616 (8th Cir. 1931); Hansen & Rowland v. C. F. Lytle Co., 167 F.2d 998 (9th Cir. 1948). See 1 Moore's Federal Practice 4235 (1961). See generally 1 Moore's Federal Practice 4017–23 (1961); Note, Successive Appeals and Law of the Case, 62 Harv.L. Rev. 286 (1948); Annot., 1 A.L.R. 725 (1919); Note, 34 L.R.A. 321 (1915); 5B C.J.S. Appeal and Error §§ 1821–1823, 1964 (1958); 3 Am.Jur. Appeal and Error §§ 994–996 (1936).

16. Cf. Von Der Heydt v. Rogers, 102 U.S. App.D.C. 114, 251 F.2d 17 (1958); Fed. R.Civ.P. Rule 52(a).

Had the District Court on remand found that the parties themselves had in fact included the clause, that would have been dispositive of the case and would have mooted the remaining legal issues. It hardly follows from our declining to decide legal issues which might be mooted by a finding of fact, that we intended to decide the very issues which might thus have become moot. The only *necessary* result of our discovery that the record lacked an essential finding of fact was to:

> " * * * set aside the judgment of the District Court and remand the case for a determination as to the content of the contract under which the Sportservice made the installation."

That was the only explicit condition of our remand, as the final sentence of our opinion made clear:

> "With the determination of the issue as to the content of the contract, the District Court on this remand will be free to enter such judgment as it may be advised as to the obligations between the respective parties."

I respectfully submit that the majority today implies [17] that we ruled upon matters which we did not even consider. All the issues on the merits were briefed and argued to this court on the first appeal. I think our failure to express any views thereon evidences our intention not to consider them at that time. The only support for implying a contrary intention must be drawn from omissions, contentions of counsel not responded to, and perhaps dictum. As noted earlier, such matters do not support application of the law of the case.

Moreover, our prior opinion did not state all of the facts essential for consideration of the merits; it contained no citations of authority; and it in no way indicated wherein the District Court had erred. And although the merits present close and difficult legal questions, as noted below,[18] neither our prior opinion nor our present one asserts any legal theory for upholding the validity of the contract. In such circumstances, when the court applies the "law of the case," I respectfully submit that the effect is not to cut off reconsideration of the merits, but to cut off any consideration at all. I therefore dissent.[19]

17. Compare Mayflower Hotel Stock P. Com. v. Mayflower Hotel Corp., 89 U.S. App.D.C. 171, 193 F.2d 666 (1951); and Sorensen v. Pyrate Corp., 65 F.2d 982 (9th Cir. 1933); with Christoffel v. United States, 94 U.S.App.D.C. 168, 214 F.2d 265, cert. denied, 348 U.S. 850, 75 S.Ct. 75, 99 L.Ed. 670 (1954).

18. That the contract may be a valid lease for a term of years, see Flagg v. Dow, 99 Mass. 18 (1868); Bishop of Bath's Case, 77 Eng.Rep. 303, 6 Co.Rep. 34b; Smith's Transfer & Storage Co. v. Hawkins, 50 A.2d 267 (D.C.Mun.Ct.App. 1946); Strack v. Fradus, 168 N.Y.S. 530 (Sup.Ct.1918). That the contract was not sufficiently definite to create a valid lease for a term of years, see Say v. Smith, 75 Eng.Rep. 410, 1 Plow. 269 (1530); Stanmeyer v. Davis, 321 Ill.App. 227, 53 N.E.2d 22 (1944); Morse v. Brainard, 42 App.D.C. 448 (1914); O'Reilly v. Frye, 263 Mass. 318, 160 N.E. 829 (1928), and cases cited therein; Annot., 43 A.L.R. 1451 (1926); 32 Am.Jur. Landlord & Tenant § 62

(1941); Note, 2 Ark.L.Rev. 126 (1947). That the amended agreement is not a lease but rather a license, see Thayer v. Brainerd, 47 A.2d 787 (D.C.Mun.Ct. App.1946); Tips v. United States, 70 F.2d 525 (5th Cir. 1934); R. H. White Co. v. Jerome H. Remick, 198 Mass. 41, 84 N.E. 113 (1908); Norman v. Century Athletic Club, 193 Md. 584, 594, 69 A.2d 466 (1949); Frank Warr & Co. v. London County Council, 1 K.B. 713 (1904). See generally 32 Am.Jur. Landlord & Tenant § 5 (1941); Conrad, An Analysis of Licenses in Land, 42 Columb.L.Rev. 809, 815 (1942); Clark, Real Covenants and Other Interests Which Run With the Land (1947). Since the legal questions which underlie the merits appear difficult indeed, we should not lightly imply an intention to resolve them without discussion in our prior opinion.

19. The court's disposition today makes it unnecessary for me to express any opinion regarding the merits of this controversy.